JIM RAILSBACK v. THE STATE.

No. 3867. Decided May 20, 1908.

1.—Assault With Intent to Rape—Postponement.

Where upon trial for assault with intent to commit rape, the motion for postponement was oral, and the court therein was not called on to postpone the case to any certain time on account of the absent witness, who was expected to appear during the trial, but failed to do so, there was no error

2.—Same—Charge of Court—Definition of Offense—Reasonable Doubt.

Where upon trial for assault to rape by force, the court in express terms applied

the law as to the specific intent, the want of consent and the question of force, and that of resistance by the prosecutrix, to the facts upon the issue of assault with intent to rape, as well as aggravated assault, and charged the doctrine of reasonable doubt as between the two offenses, and also charged upon the theory of the defense of consent, there was no error; although the general definition in the court's charge of rape included the term fraud.

### 3.—Same—Specific Intent—Sufficiency of Evidence.

Where upon trial for assault with intent to rape the testimony of the prosecutrix showed a deliberate and outrageous assault upon her by the defendant with the intent to rape without her consent and in spite of her resistance, which was denied by the defendant who claimed to have had intercourse with her by her consent, the conviction will not be disturbed, although the ·subsequent conduct of prosecutrix was not just what ordinarily one would expect from a woman so treated.

Appeal from the District Court of Runnells. Tried below before the Hon. Jno. W. Goodwin.

Appeal from an assault with intent to commit rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*R. B. Truly, John I. Guion, J. F. Cunningham* and *W. J. Cunningham,* for appellant.—On question of postponement: Cordway v. State, 25 Texas Crim. App., 405; Simmons v. State, 26 Texas Crim. App., 514. To sustain a conviction for this kind of felony the specific intent to have carnal knowledge of the alleged injured female by force—and such force as to overcome resistance must be shown. This evidence of specific intent to commit rape by force must be beyond the mere possibility of such intent. The evidence must show certainly and beyond a reasonable doubt, that such specific intent did exist at the time of the alleged commission of the crime. Cotton v. State, 19 Texas Crim. Rep., 912; Simmons v. State, 44 Texas Crim Rep., 488; Graybill v. State, 41 Crim. Rep., 286; Hancock v. State, 47 S. W. Rep., 465. And as to specific intent: House v. State, 9 Texas Crim. App., 567; Sadler v. State, 12 Texas Crim. App., 194; Peterson v. State, 14 Texas Crim. App., 162; Jones v. State, 18 Texas Crim. App., 485; Moore v. State, 20 Texas Crim. App., 275; Pless v. State, 23 Texas Crim. App., 73; Carroll v. State, 24 Texas Crim. App., 366; Robertson v. State, 30 Texas Crim. App., 498; Shields v. State, 32 Texas Crim. App., 498; Stienke v. State, 33 Texas Crim. App., 65, Porter v. State, 33 Texas Crim. App., 385; Marthall v. State, 34 Texas Crim. Rep., 22; Matthews v. State, 34 Texas Crim. Rep., 479; Ellenberg v. State, 36 Texas Crim. Rep., 139; Rhea v. State, 30 Texas Crim. App., 483; 17 S. W. Rep., 931. On question of charge of court in defining offense: Cooper v. State, 22 Texas Crim. App., 419; Serio v. State, 22 Texas Crim. App., 633; Taylor v. State, 24 Texas Crim. App., 299.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Runnells County for the offense of an assault with intent to rape upon one Maud Harding, alleged to have been committed on the 7th day of October, 1905. The indictment was returned on March 15, 1906.

1. The record shows that before the term of court at which he was tried he had filed two applications for a continuance. The second application for a continuance was filed on March 12, 1907, and was granted on account of the absence of Mrs. Mills who was averred to be a material witness. The case as shown by the record was called for trial on the 2nd day of November, 1907, at which time counsel for appellant announced that they were not ready for trial on account of the absence of Mrs. Claudia Mills and moved the court to grant a postponement of the trial to a future day of the term and to issue an attachment for said witness to Gonzales County where she resided, so that they could have the testimony of the witness on his trial and to illustrate and show the materiality of the testimony of this witness they referred to a second application for a continuance made in March previous. It was shown by the application for a continuance filed in March, 1907, that while this witness had come to Ballinger to attend the trial that on account of the prevalence of smallpox and other diseases of a similar character at Ballinger, she had suddenly and without notice left for home, taking her small children with her; that on account of this showing the continuance was granted and an attachment ordered for said witness returnable to this, September term, 1907. It was shown in the application for postponement that on Sptember 27, 1907, appellant had made application as required by the statute for a subpœna for a non-resident witness, which was duly issued and was executed on October 1st thereafter by the sheriff of Gonzales County by summoning said witnses as required by law to appear and testify herein on behalf of appellant at this term of court. The application also showed that counsel for appellant stated that he had received a letter from the sheriff of Gonzales County, stating in substance that said witness had been duly subpœnaed and would be promptly at court on October 7, 1907, when she was required to answer, which letter was read to the court. It was stated that appellant would be able to prove by this witness that on the day of the alleged assault the prosecuting witness had followed him, appellant, to the gate and talked to him standing; that she saw him drive up to her house and go in; that she saw prosecutrix at Sunday school the next day after the alleged assault and was with her a large part of the Monday, Tuesday and Wednesday following; that on Thursday following she was on the creek with prosecutrix gathering pecans not far from her home; that she seemed happy and cheerful; that she and her husband were the nearest neighbors of prosecutrix and her family, living only about a hundred and fifty yards from them; that while gathering pecans she told her that she expected Jim, meaning defendant, and Nettie, meaning this defendant's wife; that Jim had agreed to bring Nettie over and that they were going to do some quilting; that they

heard a wagon and said Maud spoke up and said, "I bet that is them coming now," all being said in a good humor and a good spirit. This motion to postpone was overruled by the court, who makes in connection therewith, the following explanation: "This case was continued at the spring term 1907 and at the fall term 1906; on account of the absence of this witness, Mrs. Mills, and when subpœnæd at spring term 1907, the court overruled and passed an order authorizing the issuance of an attachment for this witness in behalf of defendant to any county of the State of Texas. Defendant never called for this attachment, but as alleged and at the time alleged, called for and obtained a subpœna for the witness after she had disobeyed his subpœna and attachments had been awarded him.

When this case was called for trial defendant only asked a postponement of the case stating that if the case was postponed for that length of time the witness would be here and if not they would go to trial. The court informed the attorneys for defendant that it would take that long to try the case and if they expected her in that time she would come in time to testify before conclusion of the trial. The trial lasted more than two days after commencing and the witness did not appear." Under this explanation of the court, we think it too clear for discussion, that there was no error in overruling the motion to postpone. So far as we can determine from the record, the application or motion to postpone was verbal and we must in the nature of things determine its sufficiency in the light of and be controlled by the explanation and statement of the trial court. Under this statement he was not called on to further postpone this case on account of the absence of the witness.

2. Complaint is made of the charge of the court in several respects and particularly his definition of the crime of rape is challenged. The court in his charge defined rape, as follows: "Rape is the carnal knowledge of a woman without her consent, obtained by force, threats or fraud, or the carnal knowledge of a woman other than the wife of a person having such carnal knowledge with or without consent, and with or without use of force, threats or fraud, such woman being so mentally diseased at the time as to have no will to oppose the act of carnal knowledge the person having carnal knowledge of her knowing her to be so mentally diseased; or the carnal knowledge of a female under the age of fifteen years, other than the wife of the person, with or without her consent, and with or without the use of force, threats or fraud." That this portion of the charge was erroneous and not called for by the facts of the case under the indictment here presented is, we think, evident. The indictment alleged assault by force, threats and fraud by appellant upon the person of Maud Harding. The proof in the case excluded any question of fraud and was mainly an assault to rape, if a crime at all, by force. Notwithstanding the inclusion of some matters in the definition of rape, having no relation to the charge made in the indictment or the evidence adduced when the court came to apply the law to the facts, the charge is, we believe, subject to no serious criticism.

The court in apt terms instructed the jury that to constitute rape by force, the accused must have ravished the alleged injured female by having carnal knowledge of her without her consent and against her will by force, and the force used must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the·parties, and other circumstances of the case. With special reference to the crime charged, the court charged the jury that the facts must exist which show an assault by the accused upon the injured female coupled with an intention on his part to commit rape by force. There must be the use by the accused of some unlawful violence; that it must be shown that the intent of the accused was to accomplish his purpose by force and against the will of the female. The sixth paragraph of the court's charge is as follows: "The assault, as above defined, must be accompanied with: 1. The specific intent to rape. 2. To have carnal knowledge of the woman without her consent. 3. To have such knowledge by force. 4. To have carnal knowledge of the woman without her consent and by the use of such means as is sufficient to overcome all resistance within her power, and accomplish his purpose at all hazards." The court in express terms applied these instructions both to the issue of assault with intent to rape and of aggravated assault, and charged the doctrine of reasonable doubt as between the two offenses, and also with reference to the defense interposed by appellant that the sexual intercourse confessed by him was with her consent.

3. Appellant insists with great earnestness that the verdict of the jury is contrary to and against the evidence and as grounds for such contention claims that the evidence did not show the specific intent on the part of defendant to commit the crime of rape but at most shows only an attempt to have carnal intercourse with the prosecutrix; that their familiarities and acts, the failure of prosecutrix to make any outcry at the time and her long silence afterwards with reference to the matter preclude the idea that appellant made any assault with intent to commit rape, but rather implies acquiescence and consent on the part of prosecutrix, and raises, as he says, a grave doubt as to whether defendant is guilty of any offense, and especially of that charged and of which he was convicted. The testimony of prosecutrix shows a deliberate, vigorous and an outrageous assault upon her by appellant with the intent to rape and is inconsistent with any other idea execpt the specific purpose to have carnal knowledge of her without her consent, over her protest and in spite of her resistance. Her subsequent conduct is not just what ordinarily one would expect from a woman so treated. In explanation of this, however, she states that at the time she told him she was going to tell her husband and he said, "If you do, I will kill him." She made no report of the matter to her husband, but in a few days when she saw her mother, she told her of the attempted outrage upon her by appellant. Appellant denies the attempted rape but says that on the day in question he had intercourse with the prosecutrix not only with her

consent but by her invitation. The parties were related. The appellant was her brother-in-law, he had married her sister; she was at the time some six months or more advanced in pregnancy. Appellant's statement of the matter was that Mrs. Harding had made some inquiry of him as to the relations of her husband with some lewd women in San Angello and he had finally, in substance, told her that he had been spending a great deal of money with lewd women at that place and in this connection she said she was going to get even with him, and rubbed and pushed her stomach up against him; that he said to her if she was going to give it away that he had as well have some of the toll as anybody else. There was no attack made on Mrs. Harding except by appellant's wife, or claim that she was other than a chaste, virtuous woman. The story of appellant is much more unreasonable than that by Mrs. Harding. The question was one peculiarly for the jury; they have after hearing the witnesses found appellant guilty. The learned trial court has permitted their verdict to stand. Under the evidence, we do not find ourselves at liberty to set aside the jury's verdict and put our judgment against that of the court below on matters of fact, peculiarly under his observation. It is, therefore, ordered that the judgment of the court below be and the same is hereby in all things affirmed.

*Affirmed.*