JOHN MOSS v. THE STATE.

No. 761. Decided November 9, 1910.

**1.—Murder—Indictment—Constitutional Law.**

On trial of murder, where the indictment began as follows: "In the name of and by the authority of the State of Texas," the constitutional requirement which requires all indictments to begin: "In the name and by the authority of the State of Texas" was sufficiently complied with, and the addition of the word "of" did not change the meaning or substance of the constitutional expression, but only intensified it.

**2.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder, the court in his preliminary definition of self-defense charged the jury that the defendant could use all force apparently reasonably necessary for that purpose, but no more than the circumstances reasonably indicated to be necessary, and then correctly applied the law of self-defense to the facts of the case, there was no reversible error; although the preliminary charge on self-defense was not strictly accurate. Article 677, Penal Code, was not involved.

**3.—Same—Charge of Court—Manslaughter—Insult to Female Relative.**

Where, upon trial of murder, the insulting conduct to a female relative of the defendant was not brought within the clause of the statute that the killing must take place upon the first meeting after information of such conduct, and the evidence for the defendant made a case resting upon self-defence, there was no error in the court's failure to charge on manslaughter.

**4.—Same—Sufficiency of the Evidence.**

  Where, upon trial of murder, the evidence sustained a conviction of murder in the second degree, the same will not be disturbed.

Appeal from the District Court of Panola.   Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the second degree; penalty, forty-five years imprisonment in the penitentiary.

The opinion states the case.

*Brooke & Woolworth,* for appellant.—On the question of the court's charge on self-defense:   Ormand v. State, 24 Texas Crim. Rep., 495, 6 S. W. Rep., 544; Kendall v. State, 8 Texas Crim. App., 569; Cline v. State, 28 S. W. Rep., 684.

On the question of the court's failure to charge on manslaughter: McLaughlin v. State, 10 Texas Crim. App., 340; Neyland v. State, 13 Texas Crim. App., 536; Casey v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 534; Hobbs v. State, 16 Texas Crim. App., 517.

On the question of insufficient indictment:   Saine v. State, 14 Texas Crim. App., 144; Brown v. State, 46 Texas Crim. Rep., 572, 81 S. W. Rep., 718.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for murder in the second degree, the penalty being assessed at forty-five years confinement in the penitentiary.

This case, like most cases of this character, shows divergence in the testimony as to the issues arising on the trial.   The State supported its theory with testimony to the effect that appellant entertained malice and had made threats against deceased, Joel Washington.   The evidence discloses for the prosecution that deceased and appellant were neighbors, living about a half a mile apart; that deceased on one occasion was at the residence of appellant at night, and that appellant claimed and made statements to the effect that after deceased left his house he heard someone in his chimney corner, and on going out chased deceased some distance.   His statements were to the effect that deceased was seeking illicit relations with his wife.   Following this he made quite a number of threats to kill deceased, even going sufficiently far to state that he would do so if he had to creep or crawl up on him to do it.   This is shown by several witnesses, some of whom were white men.   Appellant and deceased were negroes.   On the occasion of the killing there was a gathering at a dance, or, as the witnesses call it, a "march."   Deceased and appellant, with quite a number of negroes, were present. Appellant took the stand in his own behalf and testified that he did not make the statements imputed to him by the State's witnesses, nor did he threaten to take the life of deceased, and in reference to

the conduct of deceased towards his wife he stated that instead of finding him in the chimney corner, as imputed to him, that he found him at the gallery talking to his wife, and that his wife told deceased to go away and not let her husband hear them talking. In this connection he stated, however, that he did not shoot deceased on this account. There is quite a lot of testimony pro and con in reference to these matters, contradictions and impeachments on both sides. The immediate facts attendant upon the homicide are, in substance, as follows: While the parties were engaging in the dance in the house deceased and appellant were there, but neither engaging in the dance. It is shown that deceased was drinking; some of the parties say that he was drunk. The owner of the premises instructed two or three of the attendants to take him from the house; that he did not wish him among the people while he was drinking. Deceased was taken from the house into the yard near a fence; that just after deceased left the house appellant started out and was told by Mose Jenkins, the owner of the premises, to sit down, and a chair was placed for him in a corner of the room in which appellant did take a seat. A few moments afterwards—fifteen or twenty, probably— appellant got up and went out where deceased was, and the shooting occurred. The witnesses differ as to the number of shots, but none place them less than three, and nearly all of them state four shots were fired. Mose Jenkins, in behalf of appellant, testified he was sitting in the room and heard a shot, and the ball struck the wall of the house; that he went out, and upon getting out of the house he discovered deceased walking up the fence firing his pistol down in the ground, and that he fired two shots in this manner. Appellant also fired two shots, and admitted that he did, so testifying on the trial. There are also quite a number of statements of his to the effect that he did fire two shots. The witnesses testify there was some commotion arising, but upon statements that there was nobody hurt, the dance went on, and no further attention, it seems, was paid to the shooting. Appellant returned to the room, and finally went to sleep at the house. Early the next morning the dead body of deceased was found near where the shooting is said to have occurred in front of the house where the dance occurred. Two bullet holes were found in the body on the right side just under the right nipple, one of which lodged near the backbone just under the skin. The other was not found. One of the balls went through the right arm into the body, and it is further shown that in order for the ball to have gone through the arm and into the body, the arm was hanging in a natural position. When the justice of the peace reached the body the next morning it was cold and stiff, the right hand of deceased was extended, having hold of a bunch of grass; in the left hand was found a pistol loosely held, and in the right hip pocket of deceased was found another pistol. These pistols were shown to have been discharged, but not right recently. There was some ques-

tion as to whether deceased was or was not left-handed. All the evidence introduced on the subject shows that deceased did not and had never owned a pistol. The theory, therefore, of the prosecution, in this respect, was that the pistols were placed on the body after the homicide. This is a sufficient statement to bring in review the questions raised.

1. The indictment begins as follows: "In the name of and by the authority of the State of Texas." It is suggested that the insertion of the word "of" immediately after the word "name" in this caption renders the indictment fatally defective. The constitutional requirement reads as follows: "In the name and by the authority of the State of Texas." The difference in the commencement of the indictment and the language of the Constitution is found in the fact that the word "of" immediately follows the word "name." The decisions have been rather strict in holding that the wording of the Constitution, both as to the commencement and conclusion of an indictment must be followed. Saine v. State, 14 Texas Crim. App., 144; Jefferson v. State, 24 Texas Crim. App., 535; Owens v. State, 25 Texas Crim. App., 552; Thompson v. State, 15 Texas Crim. App., 39; Thompson v. State, 15 Texas Crim. App., 168. The statute in prescribing the forms of an indictment uses the exact language contained in the Constitution, that is, the indictment must begin "in the name and by the authority of the State of Texas." In Brown v. State, 46 Texas Crim. Rep., 572, 81 S. W. Rep., 718, we held that the omission of the word "by" from this prescribed commencement of the indictment rendered the indictment vicious. It seems to be held in all the cases in this State that where any of the words prescribed in the Constitution have been omitted it is fatal to the indictment, either in the commencement of that instrument or in its termination. It has also been held that the substitution of words in the conclusion of the indictment "against the peace and dignity of the State" would be fatal. In Cox v. State, 8 Texas Crim. App., 254, the indictment concluded "against the peace and dignity of the statute." This was held sufficient grounds for holding the indictment invalid. We are of opinion, however, that none of these cases are in point as to the question here raised. The insertion of the word "of" complained of and pointed out does not in any sense detract from or add to the meaning of the constitutional expression, and "in the name of and by the authority of the State," etc., simply intensifies the expression used in the Constitution "in the name and by the authority." The meaning as written in the indictment "in the name of and by the authority of the State of Texas," as well as "in the name and by the authority of the State of Texas" is the same. The addition of the word "of" does not change the meaning or substance of the constitutional expression, but only intensifies it. We have not been cited to any authority that covers the question involved. Those cited by appellant in his brief are those we have cited.

If the addition of the word were such as to affect the constitutional expression in any way, the authorities cited would be in point. We are, therefore, of opinion that the insertion of the word "of" as inserted is not of sufficient importance to require holding the indictment vicious.

2.   The court gave the following charge: "Every person is permitted by law to defend himself against any unlawful attack and is justified in using all the necessary force reasonably sufficient to protect himself from death or serious bodily injury, and to use all force apparently reasonably necessary for that purpose, but no more than the circumstances reasonably indicate to be necessary." Following this the court gave an admirable charge directly applying the law of self-defense to the facts of the case. This charge is in nowise criticised by appellant. The contention here is that the latter clause in the charge, to wit, "no more force than the circumstances reasonably indicate to be necessary," is a limitation upon the perfect right of self-defense and was not called for by the facts of this case. This charge is not strictly accurate with reference to a case of perfect self-defense, and if it stood alone would be justly subject to criticism. It is, however, but a general statement of the doctrine of self-defense, and we think in the case in hand, without harm in view of the fact that an accurate charge applying the law to the facts was given. The court nowhere undertook to charge the limitations set out in article 677 of the Penal Code, which justifies homicide in the protection of the person or property against any other unlawful and violent attack besides those mentioned in the previous statutes. The previous statutes refer to the perfect right of self-defense without limitations. The clause in the general definition, criticised by appellant, is not sufficiently erroneous to require a reversal of the judgment.

3.   The next proposition relied upon is that the court was in error in not charging the law applicable to manslaughter. We do not think this contention is well taken. If the difficulty arose over supposed insults to the wife of deceased, he was present under his own statement when this occurred, and according to appellant's statements he chased the deceased from his chimney corner for some distance towards his home. This insulting conduct is not brought within that clause of the statute which authorizes a party, under the theory of manslaughter, to kill upon the first meeting after information of such conduct. Insulting conduct, if it occurred at all, occurred where appellant saw it, therefore the facts do not develop the issue of communicated insults. Again, appellant and deceased were in the house where the dance was going on, and had been some time before deceased was carried from the house in a drunken condition, and appellant either followed him out or went out to where he was shortly afterward and where the difficulty occurred. Under his theory he made a case of self-defense. Under that of the State it was a case of murder, which justified the jury in finding the penalty imposed.

4. It is contended that the evidence is not sufficient to justify the conviction. We are of opinion that it fully justifies the conclusion reached by the jury. There is one other feature of the testimony not mentioned that might be here stated. There is evidence going to show that deceased had charged appellant with breaking into his house for the purpose of getting whisky, and failing to find the whisky stole the head of a hog. This angered appellant, and there is some suggestion that appellant was afraid of an indictment against him for this burglary.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*