JOE HENDERSON v. THE STATE.

No. 5858.  Decided October 20, 1920.

Rehearing granted March 16, 1921.

1.—Murder—Manslaughter—Insult to Female Relative—Acts of Defendant.

There could be no reduction of a culpable homicide to manslaughter caused by insulting words or conduct toward a female relative as applied to the defendant alone in the instant case, for the reason that he has shown beyond question to have been present and heard what was claimed to be the insult offered by the deceased to his daughter-in-law, and he then gave no evidence of resentment or passion, and made no effort to attack or take the life of deceased. Following Evers v. State, 31 Texas Crim. Rep., 324.

2.—Same—Adequate Cause—Manslaughter—Rule Stated.

When one of the causes named in the statute is relied on, then such cause can only be presented under named statutory·limitations, and when insulting words or conduct to a female relative is the adequate cause relied on, the killing must have taken place immediately when the insult is given, or at the first meeting after the accused is informed thereof, and where the court's main charge correctly stated the law, there was no error in refusing requested charges on this subject.

3.—Same—Self-defense—Charge of Court—Force Necessary.

Where, upon trial of murder, the defendant objected to the Court's charge on self-defense because it restricted the force which is permissible to such as may be reasonable or necessary, but it appeared from the record that the court's charge on self-defense was not obnoxious to this objection, there was no reversible error, neither was said charge on self-defense confusing or erroneous.

4.—Same—Principals—Charge of Court—No Express Agreement Necessary.

Where, upon trial of murder the defendant objected to the court's charge on principals, but the record showed on appeal that when the court's whole charge is considered there was no reversible error, as the State's evidence showed that there was ample testimony to support an acting together of the defendant and his co-principal throughout the fatal difficulty, and their agreement to so act together may be inferred without proof of an express agreement.

5.—Same—Charge of Court—Words and Phrases—Principals.

If any error was committed by the use of the conjunction "and" in a certain paragraph of the court's main charge, which is doubted, the same was cured by the defendant's requested charge on the law of principals.

6.—Same—Requested Charge—Practice on Appeal.

Where, defendant's requested charge No. 6, the refusal of which is assigned as error, was substantially covered by the other special charges given by the court, there was no reversible error.

7.—Same—Right of Going Armed—Seeking Explanation—Perfect Self-defense.

Where, upon trial of murder the evidence showed that in carrying a pistol on the day of the homicide defendant's codefendant was following his usual custom when he was away from home, there was no error in refusing a requested charge that the co-principal of the defendant fearing trouble armed himself, etc., for the purpose of seeking an explanation, etc., besides the court's charge gave the defendant the right of perfect self-defense, and there was no reversible error. Following Smith v. State, 81 Texas Crim. Rep., 368, and other cases; and the court's charge that said co-defendant had the right to approach the deceased for an explanation, etc., does not alter the above rule.

8.—Same—Argument of Counsel—Requested Charge.

Where, upon trial of murder defendant's counsel objected to the remarks of the prosecuting attorney in his argument to the jury, but it appeared from the record that the court submitted a requested charge instructing the jury not to consider such remarks of State's counsel there was no reversible error.

9.—Same—Evidence—Declarations of Co-defendant—Res Gestae.

Upon trial of murder there was no error in admitting in evidence the declarations of defendant's co-defendant immediately after the killing that

he had killed the deceased, as this was clearly *res gestae*, nor was it error to admit the declarations of the same party to another witness, that he wanted him to remember that the deceased had a pistol, especially as the latter was favorable to the defendant.

**10.—Same—Charge of Court—Acting Together—Principals.**

The complaint that the form of the court's charge submitted the issue of the acting together of defendant and his co-defendant in certain language is different than that contended for is without merit.

**11.—Same—Newly Discovered Evidence—Change of Venue—Practice on Appeal.**

Where no error appeared from the record in the ruling of the court in overruling defendant's motion for a new trial upon the ground of newly discovered evidence, and a motion for change of venue, there was no reversible error.

**12.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence was sufficient to sustain the conviction, there was no error on that ground.

**13.—Same—Manslaughter—Charge of Court—Mental Condition of Defendant.**

Where upon trial of defendant indicted jointly with his son for murder, it appeared from the evidence that prior to the homicide there was some dispute between defendant and deceased over certain property in possession of deceased, and it was afterwards identified by the daughter-in-law of the defendant as the latter's property, and soon thereafter defendant saw the deceased carrying to market this property and accused him of the fact, and a conflict arose therefrom in which the defendant slew the deceased, the court should have submitted a charge on manslaughter predicated on defendant's own mental condition at the time. and regardless of that of his co-defendant.

**14.—Same—Principals—Manslaughter—Degrees of Homicide—Different Motives.**

Where, upon trial of murder, in which the evidence showed that the son of defendant did the actual shooting, and the defendant's testimony showed that, while defendant was present, he did not actually participate therein, and there was no proof of an express agreement between the defendant and his co-defendant to take the life of the deceased, still such agreement might have been inferred from' what occurred at the place of the killing, and there was no error in the court's charge submitting the law of principals; but where the evidence also raised the issue of manslaughter, the court should have submitted a charge thereon, although the defendant and his son may have acted together and may have had a common purpose, still they could have been actuated by different motives and been guilty of different degrees of homicide.

**15.—Same—Theory of Defense—Charge of Court—Manslaughter.**

This court has often held it necessary to submit a charge on manslaughter based on evidence wholly contradictory to the theory and testimony of the defense, and although in the instant case, the defendant denied the testimony of the State's witnesses and attributed the killing to his son alone, yet where he excepted to the charge of the court because it did not present the issue of manslaughter based on his own passion, the court's refusal to submit such charge on manslaughter is reversible error.

Appeal from the District Court of Gregg. Tried below before the Honorable Charles L. Brachfield.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Johnson, Edwards & Hughes, Lacy & Bramlette, McCord & Campbell,* and *Young & Stinchcomb,* for appellant.—On question of principals: Day v. State, 138 S. W. Rep., 127.

On question of court's charge on self-defense: Comegys v. State, 137 S. W. Rep., 349; Castro v. State, 146 S. W. Rep., 554; Huddleston v. State, 112 S. W. Rep., 64; Lyons v. State, 159 id., 1070; Parish v. State, 153 id., 327; Antin v. State, 147 id., 234; Mayhew v. State, 144 id., 230; Terrell v. State, 111 id., 152; Carson v. State, 123 id., 591.

On question of manslaughter: Beckham v. State, 69 S. W. Rep., 535; Parish v. State, 153 S. W. Rep., 327.

On question of going armed: Shannon v. State, 28 S. W. Rep., 687; Melton v. State, 83 id., 822; Parish v. State, 153 id., 331.

On question of argument of counsel: Burrell v. State, 138 S. W. Rep., 707; Wells v. State, 145 id., 951; Jenkins v. State, 93 id., 727.

*Alvin M. Owsley,* Assistant Attorney General, and *J. P. Anderson,* District Attorney, for the State.

LATTIMORE, Judge.—In this case appellant was convicted of murder in the District Court of Gregg County, and his punishment fixed at confinement in the penitentiary for a term of ninety-nine years.

It appears from the record that appellant, Joe Henderson, and his son, Charles Henderson, were in an automobile, going to the town of Longview, and that they overtook a wagon, in which the deceased, Robert Killingsworth was, he being accompanied by a negro named Henry Sargent, who was driving the wagon. The parties lived in the same neighborhood, and had apparently been on friendly terms for many years until shortly before the homicide, when there arose a dispute over some turkeys belonging to the appellant, which appear to have strayed away from home. Not many days before the killing, appellant went to the home of deceased, and in company with the wife of the latter, looked at the turkeys on the place, but was unable to identify or lay claim to any of them. On a later occasion, appellant returned to the home of deceased, being accompanied on that occasion by his young son, and also by a negro boy, and the wife of appellant's married son, Mrs. Monnie Henderson. The parties seem to have amicably repaired to a bermuda grass pasture not far from the Killingsworth house, where the turkeys of the latter were. At this place deceased assisted in the examination of some nineteen turkeys, a number of which were claimed by Mrs. Monnie Hender-

son as those of appellant. A difference then arose, deceased claiming that the nineteen turkeys belonged to him, and further asserted that no one could identify or separate the flock of turkeys, as they were all alike. This seems to have caused young Mrs. Henderson to become angry, and led to her slapping deceased on the jaw. The witnesses for appellant give one version of what occurred there, and those for the State give an entirely different account of it. The witnesses for the State seem to indicate that the Henderson parties were the aggressors, both in the use of vile language, and the attempts made by them to obtain the turkeys. The witnesses for appellant, consisting of himself, his young son, and Mrs. Monnie Henderson, testified that deceased, on that occasion, told Mrs. Monnie Henderson that she was no part of a lady, or she would not be "messing and puking around" about those turkeys, and that thereupon she slapped him. The appellant's witnesses claimed that when he and his daughter-in-law reached home that day, and told Charles Henderson, the husband of Mrs. Monnie Henderson, what had occurred, he was very much affected, and wanted to go at once and see deceased, but was restrained by appellant. Testimony for the State as to the immediate facts surrounding the killing, differs very materially from that of appellant. If the State's testimony is true, appellant was unquestionably guilty as a principal with his son in the commission of the homicide. If guilty, he became so by virtue of the application of the doctrine of principals, it not being contended that he fired either of the shots that resulted in the death of deceased, but that he was present, and aided, advised, and encouraged his son in the commission of the offense, and himself made an assault upon deceased with a stick both before and after the fatal shot. The theory of appellant on his trial, was that the homicide was one of self-defense, and in no event, of a higher grade than manslaughter. The latter theory was predicated upon the claim that the killing was under the influence of passion, caused by insulting words or conduct toward a female relative. We may here state that in our opinion there could be no reduction of a culpable homicide to manslaughter upon the above ground, as applied to appellant alone, for the reason that he is shown beyond question to have been present and heard what was claimed to be the insult offered by deceased to his daughter-in-law, and then gave no evidence of resentment or passion, and made no effort to attack or take the life of Killingsworth. Evers v. State, 31 Texas Crim. Rep., 324; Townsell v. State, 78 S. W. Rep., 939; Moss v. State, 60 Texas Crim. Rep., 272. This is said as disposing of the contention made in various ways by appellant in the record, that the court should have given in the general charge, or in special charges, the law of manslaughter based on the passion of appellant himself at the time of the shooting. As to Charles Henderson, the degree of whose guilt, if any, controls our decision in this case, the issues were self-defense, and manslaughter based on the alleged insult. As stated above, the killing, looked at from the viewpoint of the

testimony of the State's witnesses thereto, was a most brutal murder. Viewed from the standpoint of the testimony of the appellant as to what occurred at the time of the homicide, it seems to us to be entirely a case of self-defense or manslaughter. Appellant was the only witness as to these facts. He testified that ne and his son, in a car, passed the wagon in which deceased and said negro driver were, and that shortly thereafter, Charles Henderson said, "I am going to talk of Mr. Robert," or words to that effect, and stopped the car. That when the wagon came up, the mules stopped, and Charles said to deceased "Good morning," or "good morning" Mr. Robert, and deceased spoke. That Charles then said, "What was it you said to my wife that caused her to slap you?" and that deceased replied "I have all that turkey mess I can stand, and will end it right now," and ran his hand into his pocket and "throwed it up" on Charles. That there was something in the hand of deceased, and that he could not tell it was a pistol at that time; that when that was done, he looked at his son, and Charles was pulling a pistol; and about that time the shooting commenced. That deceased then got over the wagon to the other side, and there were other shots, and when he, appellant, got out of the car, he saw deceased with a pistol in his hand; that he ran up and took the pistol away from deceased, who then fell to the ground. This is the substance of the testimony of appellant, and these facts, if true, would make out for Charles Henderson and for appellant as a co-principal a case of self-defense, the law of which, appellant was entitled to have presented to the jury. We are unable to find in the testimony any fact as to anything occurring at the time of the shooting which could be looked to, or claimed to have the effect of reducing the homicide to manslaughter, and unless such killing be attributable to the passion created by the alleged insult to Charles Henderson's wife, there would seem to be no manslaughter in the case on the part even of Charles Henderson. Appellant presents here as error, the refusal of his special charges 4, 5, 12 and 14, in connection with matters pointed out in paragraphs 20 and 22 of the court's charge. The matters contained in these charges are quite lengthy, and in our opinion, are not of sufficient importance to quote; but we have carefully examined and considered all of same. The errors claimed in the refusal of the special charges, and in the giving of that portion of the general charge complained of, are here presented under the proposition that even if the killing did not take place at the first meeting of the parties after the alleged insult, still the jury were entitled to consider such insult in determining whether the conditions were sufficient to create a manslaughter passion. We understand that there is no statutory limitation of adequate causes to those named, and that they are but instances. The final test in every case, is whether or not that which is claimed to be adequate cause, is such as would have produced manslaughter passion in the mind of an ordinary person, under like or similar conditions. We observe, however,

that when one of the causes named in the statute is relied on (and we confess ourselves unable in this case to see foundation for any other in the record), then such cause can only be presented under named statutory limitations. Article 1133, of Vernon's Penal Code, is as follows: "When it is sought to reduce the homicide to the grade of manslaughter, by reason of the existence of the circumstances specified in the fourth subdivision or article 1132 of the Penal Code, it must appear that the killing took place immediately upon the happening of the insulting conduct, or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the party killed, after having been informed of such insults."

Unless there be some ambiguity of expression, the plain direction of the statute controls, and it is plain that in unmistakable words the statement is made above that when insulting words or conduct to a female relative is the adequate cause relied on, and appearing in the record, the killing must have taken place immediately when the insult is given, or at first meeting after the male relative who slays, is informed of such insult. The charge of the court correctly stated the law, and the special charges asked were each contrary to the principle just announced. We see no error in this matter as presented.

Appellant reserved exceptions to paragraphs 9, 10, 11 and 12 of the charge. These objections are summarized in a proposition, which states that when one acts in self-defense against a murderous attack, or an attack with a deadly weapon, threatening death or serious bodily harm, it is error to restrict the force which is permissible to such as may be reasonable or necessary. In passing on this question, we must keep before us the entire charge of the court bearing on same. In paragraph 14, the trial court, applying the law to the facts, states as follows:

"(14) If you believe from the evidence beyond a reasonable doubt that the defendant, Joe Henderson, acting with Charley Henderson as principal, as that term has heretofore been defined to you, did, in Gregg County, State of Texas, on or about the 5th day of December, 1919, shoot with a gun and thereby kill Robert Killingsworth, but you further believe, or if you have a reasonable doubt as to whether or not such is a fact, that, at the time of so doing, Robert Killingsworth had made or was about to make an attack on him, the said Joe Henderson, or Charley Henderson, which, from the manner and character thereof, as viewed from his standponit caused the defendant, Joe Henderson to have a reasonable expectation or fear of death or bodily injury to himself or to Charley Henderson, and that acting under such reasonable expectation or fear of death or serious bodily injury to himself or to Charley Henderson, he shot with a gun and killed Robert Killingsworth, then you will acquit the defendant."

Appellant cites a number of authorities as supporting his proposition last referred to. We have examined them, but feel justified in asserting that in each of them the charge criticized is to be clearly differentiated from that in the instant case, and that the part of such charges containing said difference, is the objectionable part in each instance. Most of these criticized charges are charges wherein the jury are told that the accused must not use more force than is reasonable or necessary. Some are based on failure to apply the doctrine of reasonable doubt, and others have other points of criticism, but all are distinguishable from the charge in the instant case. It will be observed that those portions of the instant charge, to which objection is made, are abstract definitions, and that the application of the law to the facts in paragraph 14 above set out, is a presentation of the law of perfect self-defense, and we think same is correct.

Appellant's tenth assignment of error seems but a repetition of those just discussed  In his eleventh and twelfth assignments, complaint is made that the law of manslaughter is not submitted as personally applicable to the passion existing in the mind of appellant at the time of the homicide; also, that the right of appellant to act in his own self-defense, as well as the defense of Charles Henderson, is not submitted. We do not think either contention sound. We have already indicated herein our opinion that there was no issue of manslaughter in the case predicable on passion of appellant himself. On the other point made, there is an utter lack of any evidence that deceased  was making, or threatening to make, any character of attack on appellant, who says he was sitting in the car by the roadside, when the pistol firing began, and neither word or act of deceased was in testimony as being directed at, or including appellant.

Appellant has another assignment, questioning the correctness of paragraph 14 of the charge which is set out above, upon the hypothesis that the same is confusing and erroneous, but we are unable to agree with the contention.

Objection was also made to paragraph 7 of the charge, wherein the court told the jury, as a part of the law of principals, as follows: "If defendant had entered into an agreement with Charles Henderson to kill deceased and agreed to act together in so doing, and in pursuance of a previously formed conspiracy and a common intent of both, the defendant acting in conjunction with Charlie Henderson, took the life of deceased, then the jury will find the defendant guilty of murder;" the ground of this objection being that said charge was without evidence to support it; that it affirmatively misstates the law and authorizes a conviction, regardless of the issues of manslaughter and self-defense. The whole of paragraph 7 of the charge is as follows:

"(7)   Now, therefore, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Joe Henderson, had entered into an agreement with Charley Henderson to kill Robert

Killingsworth, and agreed to act together with each other in so doing, and had previously formed a design in which the minds of the two united and concurred in the common intent to take the life of Robert Killingsworth, and in pursuance of a previously formed design and in pursuance of said common intent of both, the said Joe Henderson, acting in conjunction with Charley Henderson, took the life of Robert Killingsworth, then you will find the defendant guilty of murder."

We are unable to see how it can be contended seriously that this, if not a correct statement of the law does not impose an unnecessary burden on the State. If the State's evidence be believed, there was ample testimony to support an acting together of the father and son throughout the fatal difficulty. Both of them got out of their car some distance ahead of the wagon of deceased, and according to the State's testimony, their acts had but one object thereafter, namely, the death of deceased. When parties act together in the accomplishment of an object, their agreement so to do may be inferred without proof of an express agreement; the court may lawfully instruct the jury as to the consequences of such agreement, whether same be established by proof of an express agreement, or one inferable from the acts of the parties either on the day of the commission of the offense or at other times.

If any error was committed by the use of the conjunction "and" in paragraph 8 of the charge, which is doubted, same was cured by special charge No. 16, wherein the jury were plainly told that appellant could not be a principal in the killing of deceased unless he knew that Charles Henderson intended to unlawfully kill, and knowing such intent, aided by acts, etc.

Appellant's special charge No. 6, the refusal of which is assigned as error, was substantially covered by the other special charges given, and especially numbers 16, 17 and 18.

There seems no sort of evidence in this record, that Charles Henderson, fearing trouble, or to prevent injury to himself, armed himself, and went to the place where deceased was, for the purpose of seeking an explanation or an interview. The evidence rather tends to show that in carrying the pistol on the day in question, he was following his usual custom when he was away from home on business, and under such facts, the requested charges Nos. 7, 10 and 11 were properly refused. The rule laid down in the authorities cited in support of appellant's contention regarding this matter, is the well known rule that one who seeks an interview or explanation, and reasonably anticipates danger or trouble, may arm himself before going to where his adversary is, and does not forfeit his right of self-defense by so doing. As indicated above, we do not think this rule is applicable under any of the facts appearing in this record. None of the authorities cited, and none known to us, announce the law to be that if a man who ordinarily carries a pistol, meets his adversary, and at such meeting ask an

explanation, or seeks an interview, and a killing results, a charge should be given on the right of the accused to arm himself and seek his adversary. It further seems to be universally held that where the charge of the court gives to the accused the right of perfect self-defense, as in this case, no charge on his right to arm himself and seek his adversary is necessary or proper.--Smith v. Sta: 81 Texas Crim. Rep., 368, and authorities collated. This seems to be the rule since Williford v. State, 38 Texas Crim. Rep., 393.

We do not think the fact that in the charge the court told the jury that Charles Henderson had the right to approach deceased and ask an explanation of the alleged insulting words, if any, alters the above rule as applicable to the instant case.

It is made to appear by bill of exceptions No. 1 that certain remarks were made by the prosecuting attorney in his argument to the jury, which were improper, and it is stated in the bill of exceptions that the trial court declined to stop or reprove counsel while making such remarks. These remarks are objected to here as error. In this connection we observe that appellant presented to the court a special charge in writing, which was given by the court, instructing the jury not to pay any attention to these remarks of counsel for the State. We have carefully examined the matter contained in this bill, and observe that no statement of any fact outside of the record appears therein, nor was any personal abuse of the appellant indulged in; but same appears to be an impassioned appeal to the jury to convict appellant for certain strong reasons based on citizenship. The authorities cited by appellant contain numerous instances where cases were affirmed where similarly strong language was used, it appearing to be the rule that where an instruction is given to the jury not to consider the remarks made, a reversal would not be held by this court to be warranted unless the language used in the remarks contained some statement of fact outside the record, some personal abuse, or some misstatement as to the law of the case, which would be calculated to injure the accused, or to mislead the jury. Inasmuch as the charge was given, directing the jury to disregard such remarks, we would not feel justified, in view of the authorities presented, in reversing the case upon this ground. It is contended further that the court erred in overruling appellant's objection to the testimony as to statements made by Charles Henderson after the shooting, to the witness Hughey. An examination of the facts disclose that at the time of the shooting, Hughey was some 175 to 200 yards distant from the scene; that he heard said shooting, and saw the parties immediately thereafter; that Charles Henderson got in his car and drove immediately to where Hughey was, and as soon as he reached him, said, "We have killed Robert Killingsworth." This appears to us to be admissible, and clearly within the rule of *res gestae*.

Another objection presented, is to a statement made by Charles Henderson to the negro Sargent about the same time, the statement

being that Henderson said to the negro, "Did you see that pistol that Robert Killingsworth had?" The negro made no reply, and Henderson then said, "Damn you, did you see that pistol that Robert Killingsworth had?" and the negro replied "Yes," and that Henderson then said to him, "By God, I want you to remember that." If we were in doubt as to whether this was admissible under the rule of *res gestae,* we would be of opinion that it was evidence favorable to the accused. and its admission would not be error.

Complaint that the form of the court's charge submitting the issue of the acting together of appellant and his son in certain language, appears to us to be without merit, as there is practically no difference in the language submitted and—that contended for by the appellant.

There are a number of other errors complained of in the case. We do not think the court erred in overruling appellant's motion for a new trial upon the ground of newly discovered testimony, as all of it, appearing from the affidavits attached to the motion, seemed to us to be of matters impeaching in their nature, and it being the rule not to grant new trials in order to obtain impeaching testimony. The action of the trial court in overruling appellant's motion for a change of venue, was one which we would not feel justified in holding erroneous, inasmuch as the evidence bearing upon the issue of prejudice and combination in Gregg County, was conflicting, and was, addressed to the sound discretion of the trial court; and we do not believe that it appears that such discretion was abused.

Nor do we feel ourselves justified in agreeing with the contention made by appellant that the evidence showing the acting together on the part of the accused and his son at the time of the homicide, was of such character as to be unbelievable. The witnesses were before the jury and also before the trial court, who passed on the motion for a new trial. While it may be true that the statement of facts shows that the negro who was present at the homicide and testified for the State, does not give evidence of a very high degree of intelligence, and that he became confused and crossed himself in his cross-examination, still, we are not willing to conclude that this would be ground for our holding that the testimony is untrue and the verdict not warranted by same.

We have carefully gone over each contention made by the appellant in a very lengthy and voluminous record, and are unable to conclude that any of same presents reversible error ; and the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

March 16, 1921.

LATTIMORE, JUDGE.—In our original opinion we stated, in sub-
stance, that there was no evidence calling for the submission by the
trial court of a charge on manslaughter, predicated on passion of the
appellant himself. We had in mind, as raising manslaughter, only
the matter of insulting words and conduct toward either Mrs. Monnie
Henderson or appellant, and concluded that appellant could not rely
on insulting words or conduct toward himself, same being unaccom-
panied by any violence. Art. 1131, Vernon's P. C. Nor could he
claim the right to act on passion arising from any language or conduct
toward his female relatives, for the reason stated in our opinion, that
he was present when the said conduct occurred and the language was
used and did not resent it. We also had it in mind that appellant's own
evidence, if true, established his innocence of any wrongdoing; and
that of the State, if true, made only a case of murder. A more care-
ful consideration of the record makes us doubtful of the correctness
of the last conclusion stated. It will be borne in mind that when the
dispute arose over the turkeys, and appellant alone looked at those at
the home of deceased, he said he could not identify any of them as his,
but that his daughter-in-law could, and that at the subsequent visit
said daughter-in-law did positively identify a number of said turkeys
as being the property of appellant. Also that appellant's witnesses
testified that deceased, on that occasion, told the party that they could
look at the turkeys but could not take any of them away. It appears
in the testimony of State's witness Sargent that the first words
spoken of appellant to deceased, on the occasion of the homicide,
were these "You poor yellow s—n of a b—h" and "You G—d
damn s—n of a b—h, you have got my turkeys in this wagon,
and G—d damn you, I am going to kill you," and that he then struck
deceased with a stick and called on his son to "kill that s—n of a
b—h." At that time it is undisputed that deceased had in his wagon a
number of turkeys taking them to market. State witness Huey also
swore after the killing Charles Henderson drove up to his house and
told him that they had killed deceased, and when he asked what
caused it Charles replied: "A G—d damn turkey mess." It is also in
evidence by the State that subsequent to the dispute over the turkeys,
and before the homicide, the parties met or were near each other in
Longview and had no trouble on that occasion.

In the absence of any express proof of an agreement to act together
in taking the life of deceased, the State insists on its right to deduce
and infer such agreement from proof of what occurred at the place
of the killing, and we agree that it has the right to have the law of
principals submitted, and that the jury may settle this issue thus sub-
mitted in favor of the State. While this is true, we have concluded

that the testimony also raises the issue of manslaughter, predicated on appellant's own mental condition at the time. It occurs to us that if one has a dispute over property which he claims, and same has been identified as his property by members of his family or others in whom he has confidence, who are better acquainted with same than he is; and soon thereafter he sees the other party to the dispute carrying to market property which he thinks to be that in dispute, and he accuses the party of having his property, and in the conflict slays him, this would present an issue of fact as to his mental condition at the time which ought to be submitted to the jury under appropriate instructions, for the appellant has the same right to have all the law applicable submitted to the jury, as has the State. In other words, while appellant and his son may have acted together, and may have had a common purpose, still they might have been actuated by different motives, and might even be guilty of different degrees of homicide. It can easily be seen that D., planning and purposing the death of A., might relate to B. a story of insulting words and conduct of A. toward a female relative of B. and might accompany the latter to A.'s house, and be present aiding and encouraging B., within our law's definition of principals, when B. took the life of A. under circumstances which would make B.'s offense only manslaughter. But on the trial of D. who did no act of personal violence to A., proof of ·the hypotheses above stated might justify his conviction for murder. Equally true might be the converse, that D, desiring to kill A. and wishing assistance, might relate to B. a false story of insults offered by A. to a female relative of both D. and B., and thus induce B. to accompany him to A.'s house, and the latter might be present when A. was killed by D., proof of which hypotheses might result in D.'s conviction of murder and B. only of manslaughter. These illustrations serve to enlighten our conclusion that appellant may have been so aroused over a belief that his property in dispute was about to be sold by deceased and thus put beyond reach of recovery, as to have caused in his mind, in connection with other facts and circumstances in evidence, a condition which would render it incapable of cool reflection, and this may have been the cause of his actions in the premises, and may have caused him to call upon Charles to shoot the deceased, and their acting together to encompass the killing may have been thus brought about. We are asserting no opinion as to the facts further than to say that they are sufficient to demand the submission of this issue to the jury. We recognize the fact that appellant denies the story of the State witnesses and attributes the killing to Charles Henderson alone, actuated, as his testimony suggests, by self-defense, and wholly independent of any agreement or pre-knowledge on the part of appellant, but this court has often held necessary charges on manslaughter based on evidence wholly contradictory to the theory and testimony of the defense. Appellant excepted to the charge as given because same did not present the issue of manslaughter based on his own passion, and

89 Tix.—3

having concluded that this should have been given, it follows that this motion should be granted, the affirmance set aside, and the judgment reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*