### F. H. Brace v. The State.

No. 2134. Decided May 8, 1901.

**1.—Embezzlement—Defendant as Witness—Cross-Examination.**

On a trial for embezzlement of money belonging to a railroad corporation, defendant being a witness on the stand in his own behalf, was on cross-examination asked by the State's attorney "if, some sixteen years before, he had not been discharged by a railroad company in the State of Illinois," to which he was forced over his objections, to answer and state that he had been so discharged. Held, he was entitled to explain, as he proposed to do, the cause of his discharge, and it was error to refuse him permission to do so.

**2.—Same—Accomplice Testimony—Charge of Court.**

On a trial for embezzlement where the principal State's witness Davis, who was the agent of the railway company at the station where the embezzlement is alleged to have occurred, was connected by the evidence with the commission of the offense in such manner as tended to show him to be a particeps criminis, it was the duty of the court to charge the law of accomplice testimony with reference to his testimony; and it was error to fail to do so and to refuse defendant's requested instructions upon that phase of the law.

**3.—Same—Evidence Insufficient.**

See the opinion for facts stated which are held too indefinite, uncertain, and insufficient to support a conviction for embezzlement.

Appeal from the District Court of Wilbarger. Tried below before Hon. G. A. Brown.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The essential facts are fully stated in the opinion of the court, and no additional statement is necessary.

*Lucky & Berry,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Upon an indictment charging appellant with embezzling $86.94, current money of the United States of America, the property of the Fort Worth & Denver City Railway Company, alleged to be a corporation, he was convicted and his punishment assessed at two years confinement in the penitentiary.

On cross-examination, appellant was asked by the State's attorney if he had not been discharged by a railroad company at Astoria, Ill., about sixteen years ago. Over his objection, appellant was forced to

answer, and stated that he had been discharged at said time and place by a railroad company. He then proposed to explain why he was discharged; and would have stated that it was because he refused to take sides with or in any manner participate in a strike of railroad employes at the time going on. We believe that this testimony should have been admitted. Appellant asked the court to charge the law of accomplices with reference to the State's witness Davis. This was refused, and exception reserved. When the evidence tends in any way to connect a witness with the commission of the offense, or shows him to be particeps criminis in any manner, the law applicable to accomplices should be given. Davis was the agent of the railroad at the station where this embezzlement is alleged to have occurred. He was the only person with whom an account was kept at the general office of the railroad. All receipts and reports were made in his name, as well as all remittances of money. All money belonging to the railroad at the station was under his control. It was his duty to inspect the books and waybills of freight received by appellant, and see that these books were correctly kept. He directed defendant, who was the cashier of the railroad at that point, not to enter waybills on the "Freight Received Book" until he had collected money sufficient to cover the amount. All expense bills were made out by appellant in the name of the witness Davis, and Davis often collected the bills himself; and on several occasions he took all the money out of the depot to his residence, and kept it there overnight, and discrepancies occurred in the amount he took away and that which he would return. Discrepancies also occurred in the amounts which he would take from the depot with him in going to the bank to buy exchange for the purpose of making remittance, and the amount he reported to appellant upon his return to the depot. The testimony tends to show that when the discrepancies between the freight bills and waybills, etc., and the amount of money actually received, were shown, Davis would instruct appellant to carry the freight bills over until there was money sufficient to cover such bills. We are of opinion that, under this testimony, the jury should have been instructed with regard to the law of accomplice testimony.

It is insisted that the evidence is insufficient to support the conviction. We believe, as the record presents this matter, that the point is well taken. The prosecution is predicated upon the embezzlement of $86.94. If this money ever passed into the hands of appellant, it is by reason of the collection of a freight bill of some lumber consigned to the Carey-Lombard Lumber Company on May 4, 1899. Appellant testified that he never received this money; that he never collected this bill, and had nothing to do with it. The testimony shows that A. L. Tschiffely was the agent and manager of this company at Vernon. He testified: "I recognize the check you show me as being the one drawn by me as the manager of the Carey-Lombard Lumber Company of Vernon, Texas, on the 4th day of May, 1899, for $86.94, to pay the

freight on a carload of lumber, the number of the car being No. 6313. I do not know to whom I gave this check. It was payable to N. S. Davis or bearer, and I do not know anything about who collected it. I sometimes paid the freight to N. S. Davis, the agent, and sometimes to F. H. Brace, defendant. I do not know anything about whether or not the check was ever paid to anyone, except as is shown on its face. It is stamped 'Paid,' and they charged it to my account at the bank." The bank teller testified: "This check drawn by the Carey-Lombard Lumber Company, signed by A. L. Tschiffely, its manager, for the sum of $86.94, was paid by the bank, and charged upon the books of the bank against the account of said lumber company.". There was no proof offered that appellant ever collected checks at the bank. Davis testified: "It is a fact that freight was paid by checks, and such checks were turned into the bank and exchanged for a draft, which was remitted for the credit of the station. I do not remember the check in question, and do not know who collected it. I am satisfied I did not collect it, but it may have been passed into the bank to purchase exchange. When parties paying freight would give checks, they would be received as so much cash, and would be accounted to me by defendant, and by him entered upon the remittance slip as to such money; and I would put them in as so much money at the bank, and the money would not be paid out of the bank upon these checks, but they would go in as that much money to purchase exchange to be sent to Fort Worth, and then charged up against the parties who gave them. It is a fact that defendant said he did not know what went with the money, and he said at the depot that he had no money. Some of the patrons of the depot paid most all of their freight bills uptown at their office, and paid them in checks. I often collected the freight uptown on carload lots. Defendant would collect them when paid at the depot. All papers at the depot pertaining to the company's business had to be signed with my name, which was done by defendant." Appellant testified: "I never did take the money to the bank to remit to the railway company at Fort Worth. This was always done by Mr. Davis. If checks were given me for freight, I would include them in the amount given Mr. Davis to be carried to the bank, to go in as so much money in the purchase of exchange, and this was the only connection I had with them. There was no specific time within which the waybills had to be reported on the 'Freight Received Book,' and I had instructions not to so report them until I had the money on hand to cover them. Mr. Davis instructed me to hold off these bills at the 1st of the month until the money on them was collected, so as to make report to the general office show as small a list of unfinished business as possible. The waybills which had not been placed upon the 'Freight Received Book,' represented freight that had been shipped to T. J. Youngblood, Smartwood & Co., H. F. McKibben, John D. Tyson & Co., W. O. Anderson, W. H. Evans, and the Carey-Lombard Lumber Company."

There was no proof offered that any of these respective shipments of freight had ever been received by the respective consignees, or that the freight money had been paid, except the shipments of the Carey-Lombard Lumber Company and that of W. H. Evans. Evans testified that he received his shipment on May 12th, and paid appellant the freight charges, amounting to $73.60. Now, it appears that the check for the $86.94 was collected at the bank. Defendant, under this testimony, did not collect it. If it was handed to Davis to be collected, or with which to purchase exchange to be sent to the Fort Worth general office, then appellant never received a dollar of this money. He swears positively that he did not receive it, and no witness undertakes to show that he did. It is shown that he received the freight charges on the Evans shipment, of $73.60, which is a separate transaction, and for which he stands indicted in another case. It was admitted as evidence in this case as tending to show "the intent with which defendant acted with respect to the property for the embezzlement of which he is now on trial," as shown by the charge of the court. Appellant's guilt depends, among other things, upon the fact that he received this money, and subsequently embezzled it. Without this the State has no case. As presented by this record, the presumption of guilt arises from the fact that because he was the cashier, and receiver of freight bills, waybills, and expense bills, therefore he embezzled,—not that he received the money, but because it was his business to look after these different characters of bills. This character of testimony will not justify a conviction, especially in the face of the undisputed facts that draymen, the office boy, appellant, and the station agent all collected these bills and took checks for them. This testimony is too indefinite and uncertain to justify the incarceration of a citizen in the penitentiary. Davis testifies positively that he had control of appellant, and the supervision of his books and accounts in every way; and if appellant in fact received this check from the Carey-Lombard Lumber Company for $86.94, then, under the facts, Davis collected it. Such is the record, as we understand it. For the errors discussed, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*