DAN MORRIS v. THE STATE.

No. 5060.    Decided June 19, 1918.

**1.—Assault to Rape—Reference to Former Trial.**

Where the language of the State's attorney was merely incidental to the argument of the law to the court, and was not such a transgression, in the presence of the jury, of article 843, C. C. P., as to be an allusion to the former conviction, there was no reversible error. Following McDougal v. State, 81 Texas Crim. Rep., 179.

**2.—Same—Argument of Counsel—Invited Argument.**

While the argument of the district attorney was not of a character to receive the sanction of an appellate court, yet where it appeared that it was invited by counsel for defendant, the same is not reversible error. Following Baker v. State, 4 Texas Crim. App., 223.

**3.—Same—Evidence—Want of Consent.**

Where, upon trial of an assault to rape, one of the theories of the defense was the consent of the prosecutrix to certain acts of familiarity and that her subsequent complaint was due to the belief of discovery, there was no error in permitting the introduction of testimony that at the time of the alleged assault she was in a state of pregnancy; besides the testimony was withdrawn and was not of such harmful nature as to constitute reversible error. Following Miller v. State, 31 Texas Crim. Rep., 609, and other cases.

**4.—Same—Evidence—Clothes—Tracks.**

Upon trial of assault to rape, there was no error in admitting testimony that the prosecutrix exhibited to members of the grand jury the garments worn by her at the time of the assault; such testimony in substance being in the record from other sources, nor was there error in admitting testimony describing the scene of the assault and the evidences thereof upon the ground. Following Charles v. State, 196 S. W. Rep., 179.

**5.—Same—Evidence Drawn Out by Defendant—Conversation.**

The admission of testimony showing part of the conversation between prosecutrix and her husband, which was elicited by the defendant, can not be the basis of error.

**6.—Same—Hearsay Evidence—Self-serving Declaration.**

Where the rejected testimony was obnoxious to the rule of hearsay and self-serving declaration, there was no reversible error.

**7.—Same—Charge of Court—Impotency.**

Where, upon trial of an assault to rape, the prosecutrix testified that in the assault upon her, the defendant's male organ was limber and could not penetrate her, but that he used force and threatened to kill her, and the evidence was not such as to justify the trial court to decide as a matter of law that defendant's condition was such that he could not commit the offense of assault with intent to rape and the trial court submitted this issue to the jury in his charge, the contention of defendant that the conviction could not be sustained is not well taken, and there is no reversible error. Besides, it seems to be the rule that impotency is not a sufficient defense in an assault to rape. Following Hatton v. State, 31 Texas Crim. Rep., 586, and other cases.

**8.—Same—Evidence—Impeaching Witness—Refreshing Memory.**

Upon trial of assault to rape, there was no error to show to the witness, on cross-examination, his written testimony before the grand jury to refresh his memory and in the meantime lay a predicate for his impeachment with reference to his testimony upon trial, touching the condition of the parties and the statements by them immediately after the occurrence of the assault. Following McLin v. State, 48 Texas Crim. Rep., 549; distinguishing Sprangler v. State, 41 Texas Crim. Rep., 424.

**9.—Same—Aggravated Assault—Charge of Court.**

Where, upon trial of assault to rape, the court submitted a proper charge upon the law of aggravated assault there was no error in refusing a requested charge upon that subject. Following Herbert v. State, 48 Texas Crim. Rep., 72.

**10.—Same—Charge of Court—Specific Intent—Force—Charge as a Whole.**

Where, upon trial of an assault to rape, the court's charge on the amount of force used and the specific intent to commit rape, together with the requested charge, and the charge as a whole was a correct application of the law to the facts, there was no reversible error. Following Railsback v. State, 53 Texas Crim. Rep., 542, and other cases.

**11.—Same—Sufficiency of the Evidence—Conflict—Res Gestae.**

Where, upon trial of an assault to rape, the defense testimony as to consent and complaint for fear of detection was overcome by the res gestae statements and the evidence of force used by the defendant, the conviction is sustained.

Appeal from the District Court of Erath. Tried below before the Hon. J. B. Keith.

Appeal from a conviction of an assault to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. R. Stubblefield* and *Chandler & Chandler,* for appellant.—On question of reference to former trial: McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 945; Davis v. State, 54 Texas Crim. Rep., 236, 114 S. W. Rep., 366; Mays v. State, 59 Texas Crim. Rep., 141, 127 S. W. Rep., 832; Wyatt v. State, 58 Texas Crim. Rep., 115, 124 S. W. Rep., 929; Hatch v. State, 8 Texas Crim. App., 416; House v. State, 9 id., 567.

On question of argument of counsel: Beason v. State, 67 S. W. Rep., 96; Johnson v. State, 138 S. W. Rep., 1021.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of court's charge: Sanders v. State, 54 Texas Crim. Rep., 171.

MORROW, JUDGE.—The judgment condemns appellant to confinement in the State penitentiary for a period of two years for the offense of assault to rape.

The evidence is not sufficiently variant from that developed in the former appeal, 82 Texas Crim. Rep., 13, to require a restatement further than it is given in connection with the specific assignments discussed herein.

On the trial appellant objected to the introduction of certain testimony. The State's attorney replying, said: "The fact is, the Court of Criminal Appeals has held all of these facts and circumstances are admissible." On objection to this remark the court instructed the jury to disregard it. We do not regard this as an allusion in the argument to the former conviction inhibited by article 843 of the C. C. P. It is not clear that the language used was such as would be understood by the jury as a reference to the former trial of this case. Such as it was, it was merely incidental to the argument of the law to the court, and while manifestly the statute might be transgressed in an argument to the court in the presence of the jury, we are of the opinion that it was not done in this instance. The court says that while he did not regard the statement as improper he, on request of appellant's attorneys, instructed the jury not to consider it. The decisions touching the subject are reviewed at some length in the case of McDougal v. State, 81 Texas Crim. Rep., 179, 194 S. W. Rep., 944.

The State's attorney, in closing the case, used the following language: "If this case does not furnish grounds for a conviction the door of the grand jury should be closed, the sheriff should retire and the district judge resign." The argument is not of a character to receive the sanction of an appellate court. Johnson v. State, 63 Texas Crim. Rep., 50, 138 S. W. Rep., 1021; Beason v. State, 67 S. W. Rep., 96. The bill of exceptions accepted and filed by appellant is qualified by the trial judge in such manner as to show that the argument was invited by that of appellant's counsel and as thus explained is well within the rule that an argument invited by appellant does not authorize a reversal. Baker v State, 4 Texas Crim. App., 223, and other decisions of this court cited in Branch's Ann. P. C., sec. 363.

The prosecutrix was permitted over appellant's objections to testify that at the time of the alleged assault upon her she had been in a state of pregnancy for a period of some four and one-half months. One of the theories of the appellant was the consent of the prosecutrix to such acts of familiarity as occurred and the suggestion that her subsequent complaint was due to the belief of discovery. We have been referred to no authorities sustaining the proposition that the evidence was inadmissible. Assuming that it was, we think it is not of such a harmful character that the error in its admission was not cured by its with-

drawal by the trial judge. It was withdrawn shortly after its admission in a written instruction to the jury. It sometimes happens that evidence erroneously admitted is so harmful that a subsequent withdrawal will not suffice, but ordinarily the contrary is true. In Miller v. State, 31 Texas Crim. Rep., 609, this was held in affirming the death penalty case. Others are Trotter v. State, 37 Texas Crim. Rep., 468; Price v. State, 43 S. W. Rep., 96; Robertson v. State, 63 S. W. Rep., 884; Hatcher v. State, 43 Texas Crim. Rep., 237. On the subject see cases 42 Amer. State Reports, 886, and 73 Amer. State Reports, 946. We think no reversible error is shown.

Another bill complained of the testimony that the prosecutrix exhibited to members of the grand jury the garments worn by her at the time of the assault, such testimony in substance being in the record from other sources, we do not consider its admission error. Nor do we regard the bill showing the testimony describing the scene of the assault and the evidences thereof upon the ground as presenting error. Such testimony has often been held proper. Charles v. State, 196 S. W. Rep., 179, and cases cited.

The complaint of the admission of evidence of conversations between the prosecutrix and her husband in connection with the explanation of the trial judge that the testimony was part of the conversation elicited by the appellant, can not be the basis of error. As explained, these bills bring the evidence within the statutory rule declared in art. 811, C. C. P. See Vernon's Crim. Stats., vol. 2, p. 759.

The refusal of the court to permit the appellant to develop from the evidence the conversations between him and his attorney, under the circumstances shown by the bill, was proper. The evidence was obnoxious to the hearsay rule and was self-serving.

The prosecutrix, Myrtle Cook, testified in part: "He caught hold of me by my body under the arms, threw me down and got on top of me. He had his person exposed. I was trying to get away and screaming all the time. He was holding me and had one of his knees on one of my knees, and his other knee on my other knee. He choked me and said if I hollered he would kill me. Said he would —— me or kill me. He unbuttoned his pants and exposed his person. He kept me down about five minutes." She said that it rained and the ground was muddy and exhibited her clothes which she said she had on at the time, which were muddy. Also her skirt which was torn and which she said was done by appellant. She claimed that she was scratched and hair torn; and in about thirty minutes went to a neighbor's house, agitated and crying, could not speak and fell across the bed. She said on cross-examination: "On that occasion his male organ was not hard, it was limber. I don't think it ever got any other way. I don't know. It was so limber he could not penetrate me. He attempted to. I could not see it all the time. Could not say whether it ever got stiff. Can not tell you whether it did or not."

The appellant testified to the transaction and claimed that while the

prosecutrix was in her garden, which was on his farm, he met her casually and they engaged in a conversation and she voluntarily sat down on the ground and that they mutually engaged in a friendly scuffle and play. He testified, and there was other evidence, that he had been drinking.

The court gave a charge which we think fairly presented the issues. He submitted the law of aggravated assault as well as assault with intent to rape. He told the jury that if they believed or had a reasonable doubt as to the prosecutrix's willingly accepting the embraces or entering into a scuffle with appellant or willingly consenting to whatever they believed from the evidence took place to acquit. He told the jury that the specific intent to have carnal knowledge by force was essential, charged on the law of temporary insanity resulting from the voluntary and recent use of ardent spirits and gave the following instruction: "Moreover, if you believe from the evidence in this case, or if you have a reasonable doubt therefrom, that the physical system of the defendant, at the time of the alleged assault was so prostrated by the recent and voluntary use of intoxicating liquors or from any other cause, to that extent as to render him impotent or incapable of an erection, such as would enable him to commit the offense charged, of an assault with intent to rape, then you can not convict him of a higher grade of offense than aggravated assault."

Appellant insists that under the evidence the verdict of the jury is contrary to the paragraph in the charge last quoted, and that under the evidence of prosecutrix with reference to appellant's organ, no conviction for assault with intent to rape could be sustained. He relies on the case of Nugent, 18 Ala., p. 521, which was a prosecution for a similar offense. From this we take the following quotation: "The testimony tended to show that about the time the offense is alleged to have been committed, the physical system of the accused was greatly weakened and debilitated from drink, the court instructed the jury to disregard this evidence entirely, unless the prisoner was so drunk as to be incapable of committing the offense. We do not think this instruction was correct. It is true that the drunken condition of the accused would, neither in a moral nor legal point of view, excuse or palliate the crime, if in fact committed, but drunkenness may not only render one entirely incapable of committing the crime with which the prisoner is charged, but it may, by the prostration of his system, render him less capable of committing it. The effects, therefore, of the drunken condition of the accused upon his physical capacity to commit the crime was a matter to be considered by the jury, in coming to their conclusion whether the prisoner did the act with which he is charged. A certain degree of excitement from drink may increase the passions, the cravings of which lead to the commission of such unnatural and monstrous crimes, but drunkenness may be so excessive as to render the party partially or totally incapable of committing it. The evidence tended to show that the prisoner was greatly weakened by drink; this was a circumstance

to be considered by the jury, however light they might have esteemed it " There was a reversal of the case because of the action of the court mentioned. The evidence in the instant case with reference to the intoxication and the condition of appellant therefrom was in substance that for some days before the occurrence he had been drinking heavily. That he was drunk at the time it happened. He testified, however, that he knew at least in part what took place. He described in his testimony his version of the circumstances in considerable detail and stated that he afterwards went to town and attended to business transaction, stopping, however, at a hay stack and going to sleep for some time. Before going to town he had a conversation with prosecutrix, also one with his son after the occurrence which he detailed in evidence. The court in this case, unlike the Supreme Court of Alabama in the case mentioned, did, under a favorable charge, permit the jury to pass upon the question. While doubtless one may become so physically prostrated by reason of intoxication that he would be incapable of making an assault, it is quite doubtful whether the evidence in this case justified the trial court in giving the charge upon the subject, telling the jury: "That if the appellant was by intoxication rendered impotent or incapable of erection to acquit him of assault with intent to rape." Certain it is to our mind that the evidence is not such as to justify either this court in deciding as a matter of law that his condition was such that he could not commit the offense of assault with intent to rape. On the subject we refer to the case of State v. Bartlett, decided by the Supreme Court of Iowa, reported in 104 N. W. Rep., 286, from which we take the following quotation: "As a witness in his own behalf, defendant testified that for nearly a year before the alleged assault he had been unable, by reason of impotency, to engage in the sexual relation. It is now complained of that the court did not in any way refer to such subject matter in the instructions to the jury. No request was made for an instruction, but aside from this, we think none was required to be given. While impotency may be a sufficient defense to an indictment for the consummated offense of rape, it will not excuse an assault with intent. 1 Wharton, Crim. Law (8th ed.), 552; 1 Bishop, Crim Law, 737, 738."

From Wharton's Crim. Law, 11th ed., vol. 1, sec. 223, we quote the following: "Whether there must be physical ability to complete the attempt on the part of the attempter is a question which has already been touched upon in its general relation. It is enough now to view it simply in relation to rape. If there be juridical incapacity for the consummated offense (e. g., infancy), there can be no conviction of the attempt; and, therefore, a boy under fourteen can not, according to the prevalent opinion, be convicted of an attempt to commit a rape, as principal, in the first degree. It is otherwise when the incapacity is merely nervous or physical. A man may fail in consummating a rape from some nervous or physical incapacity intervening between attempt and execution. But this failure would be no defense to the indictment

for the attempt. At the same time there must be apparent capacity."

In section 690 of the same volume it is said: "Impotency is a sufficient defense to an indictment for the consummated offense, though not for an assault with intent."

Though dictum so far as it relates to the offense of assault with intent to rape, the views expressed by so eminent a jurist as Judge Hurt in Hatton v. State, 31 Texas Crim. Rep., 586, are of interest. From it we quote as follows: "The evidence shows conclusively that whether the shot used were sufficiently large to take the life of Johnson, appel-. lant greatly desired and intended to do so. When in a case the question arises as to whether the accused intended to kill, the means used by him may be looked to. If a deadly weapon is used in a deadly manner, the inference is almost conclusive that he intended to kill; on the other hand, if the weapon was not a dangerous one, or was not used in a deadly manner, the intention must be established by other facts. But it would be a monstrous doctrine to hold, that because in fact the accused did not have the ability to kill, therefore he did not intend to kill. A attempts to rape B, but fails, because physically unable to accomplish his purpose. A shoots at B with intent to kill. He fails because his gun was not true to the mark, or because his shot was not large enough to effect his purpose. To this doctrine we can not assent."

In citations of authorities and expressions used we wish to make it clear that so far as they relate to the subject of impotency that they are used with reference only to the subject under consideration, namely, of the offense of assault with intent to rape. We disclaim any intent to decide the effect of impotency in a prosecution for rape. To do so, should a case arise requiring it, it would be necessary to view the authorities in the light of our statute upon the subject of rape. Touching its bearing upon the offense in hand, the facts were for the jury and the appellant in our opinion without doubt was accorded a charge fully as favorable as the law justified.

As explained by the trial court, the cross-examination of the appellant's witness Earl Morris discloses no error. It appears that this witness had been near the scene of the alleged assault and had seen the parties, if not at the time, immediately thereafter and gave testimony relating thereto favorable to appellant. He was asked on cross-examination several questions touching the condition of the parties and the statements by them. For example, he was asked if a few minutes after the occurrence he did not see appellant and Mrs. Cook engaged in conversation and noticed that her clothes were muddy and that she was crying. That he at first denied this, when he was asked by the State's attorney if he did not so testify before the grand jury. To which he replied that he did not remember. He was then shown the written statement and asked if he did not sign the same and he stated that he did, and the inquiry was again repeated if he did not give the testimony mentioned before the grand jury, when he said that he had stated that she was crying but did not know whether her clothes were muddy

or not, but that later he saw her and saw that her clothes were muddy. The same proceedings were had with reference to the condition of appellant, whether he was drunk or appeared to be drunk on the occasion of the said assault.   The right to lay a predicate for impeachment of a witness on a material matter by inquiry as to his statements before the grand jury has often been affirmed.   Clem v. State, 13 Texas Crim. App., 153; Scott v. State, 23 Texas Crim. App., 565, and other cases in Branch's Ann. P. C., sec. 177.   The procedure appears to have been legitimate.   The State having the right to impeach him if his testimony before the grand jury was in conflict with that given on the trial, it was necessary to lay a predicate therefor.   See Branch's Ann. P. C., sec. 179.   In exhibiting to him the writing his memory was refreshed, rendering it, it seems, unnecessary to impeach him.   See Branch's Ann. P. C., sec. 160, and various cases collated.   See also McLin v. State, 48 Texas Crim. Rep., 549.   This procedure was different from that in Sprangler v. State, 41 Texas Crim. Rep., 424, where the State's attorney used the testimony of his own witness before the grand jury in a manner that was criticised.

The court's charge on the subject of aggravated assault was sufficient, rendering it unnecessary for the court to give the special charge requested upon that subject, if in fact a charge on aggravated assault was required.   Herbert v. State, 48 Texas Crim. Rep., 72.   The charge of the court was in part as follows:

"The Penal Code of this State further provides as follows:  'If any person shall assault a woman with intent to commit the offense of rape he shall be punished by confinement in the penitentiary for any term of years not less than two.'

(a)   "The assault spoken of must be accompanied with the specific intent to rape, that is, the party committing the assault must at the time it is committed have the specific intention on his part to have carnal knowledge of the woman he assaults, without her consent, and to have carnal knowledge of her by force and by the use of such force as is sufficient to overcome such resistance as the woman should make, taking into consideration the relative strength of the parties and the other circumstances and facts in the case. (a)

"Now bearing in mind the foregoing charges or paragraphs of this · charge, if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Dan Morris, in the County of Erath and State of Texas, on or about the 9th day of June, A. D. 1916, did then and there in and upon Myrtle Cook, a woman, make an assault with intent to commit the offense of rape, upon the said Myrtle Cook, by then and there attempting by force and without her consent to ravish and have carnal knowledge of the said Myrtle Cook, and that the said Dan Morris was then and there an adult male, then you will find the defendant guilty as charged in the second count in the indictment and assess his punishment at confinement in the State penitentiary of this State for any number of years in your discretion, not less than two.

"If you do not so find and believe, beyond a reasonable doubt, you will acquit the defendant.

"Or if you believe from the evidence, in this case, that Myrtle Cook willingly accepted the embraces of the defendant or consented or willingly engaged in a scuffle with him, if she did do so, or if she was willing to or consented to the actions of the defendant toward her, whatever you may believe from the evidence they were, at the time and place it is alleged that he assaulted her, or if you have a reasonable doubt as to whether she did or not, you will acquit the defendant."

That part of the charge marked "a" is complained of as upon the weight of the evidence.

Another paragraph was as follows: "Although you may believe from the evidence that the defendant assaulted the said Myrtle Cook, yet if at the time he did so he did not have the specific intent in his mind to have carnal knowledge of her by force, then he would not be guilty of a higher grade of offense than aggravated assault."

That part of the charge complained of which relates to force is in practically the same language as is embodied in one of appellant's requested charges. Appellant has referred us to no authorities sustaining his contention with reference to the insufficiency of the charge, and in our judgment, taken in connection with the other paragraphs of the charge, the one assailed affords no just cause for complaint. See Railsback v. State, 53 Texas Crim. Rep., 542; also Carter v. State, 44 Texas Crim. Rep., 312; Hudson v. State, 49 Texas Crim. Rep., 24; Payne v. State, 40 Texas Crim. Rep., 202; Sanders v. State, 54 Texas Crim. Rep., 171.

By a plausible oral argument appellant's counsel contends that the conviction should be overturned on account of the insufficiency of the evidence to sustain it, pointing to the conduct and conversations by the prosecutrix with the appellant on and prior to the occasion of the alleged assault and subsequent to that date, contending that from these matters the inference that appellant's advances and conduct toward her were not objectionable to her but were complained of only after and because she concluded that the affair had been observed by appellant's son and communicated by him to her husband. This evidence presents a theory conflicting with the express statements and conduct which were probably admitted by the court as res gestae, by the scratches and bruises upon her person exhibited immediately after the occurrence, by her agitated and apparently distressed condition described by appellant's son, and other witnesses who saw her in a very short time after the occurrence, the condition of her clothes and the ground at the scene of the alleged encounter. These conflicting theories having been solved against appellant by the jury and sanctioned by the trial judge that solution is binding upon the appellate court.

The judgment is affirmed.

*Affirmed.*