JOE HENDERSON V. THE STATE.

No. 8270.    Delivered Oct. 7, 1925.

Rehearing denied May 5, 1926.

Second motion for rehearing denied June 2, 1926.

1.—Murder—Reproduction of Testimony—Of Deceased Witness—Held Proper.

Where appellant had been formerly tried and convicted, and one of the state's witnesses, who testified on his former trial was dead, there was no error in permitting the state, after laying the proper predicate, to introduce the testimony of the deceased witness, and while the laying of the predicate and the introduction of the testimony of said witness necessarily conveyed to the jury the knowledge that there had been a previous trial, this procedure could not logically be held to violate Art. 843. See Tollett v. State 60 S. W. 964 and other cases cited.

2.—Same—Evidence—On Predicate—Properly Admitted.

Where the witness Schultz, County Attorney of the county in which the prosecution originated, in testifying on the predicate to introduce the testimony of a dead witness, testified that the dead witness was sworn

before giving his testimony, and on cross-examination the truth of this witness' testimony was assailed, it was proper, on redirect examination to permit the witness to explain why he remembered the swearing of said witness on the former trial. Following Cornett v. State 54 Tex. Crim. Rep. 372 and other cases cited. Also see Thompson on Trials 2nd Ed. Vol. 1, Sec. 475, and Art. 811 C. C. P.

### 3.—Same—Evidence—Bias and Prejudice of Witness—Properly Admitted.

It is well settled that the adverse party may prove declarations of a witness, which tend to show bias, interest or prejudice, or any other mental state or status which fairly construed might tend to affect his credibility, and under the rule the court properly permitted the state to cross-examine the witnesses Stewart and Davis, as touching their bias in favor of appellant, and of the witness Wytche, formerly County Attorney of Gregg County, as touching his prejudice against the state. See Branch's Ann. P. C. Sec. 163. Illustration of rule, see Tollett v. State, 60 S. W. 964; Ashlock v. State, 16 Tex. Crim. App. 21 and other cases cited.

### 4.—Same—Continuance—On Account of Severance—Properly Refused.

Where appellant had been twice tried before, and on this trial moved for a continuance to await the determination of the case against his co-defendant Charley Henderson, whose case had been transferred on a change of venue to Nacogdoches County, and was still pending, the continuance was properly refused. Art. 727 C. C. P. which controls the subject in question declares this does not apply where the severance sought would work a continuance of the case. See Locklin v. State, 75 S. W. 305, and other cases cited.

### 5.—Same—Misconduct of Jury—Not Established.

Where in his motion for a new trial, appellant sets up the misconduct of the jury in their discussion of his conviction on a former trial, and with reference to the death of a negro whose testimony given on a former trial was reproduced, and the evidence heard on this matter by the trial court was conflicting, it is well settled the rule that the determination of the matter by the trial court, will not be disturbed. See Shaw v. State, 32 Tex. Crim. Rep. 155 and other cases cited. Also Branch's P. C. Sec. 574.

### 6.—Same—Continued.

Nor would a reference by the jury to the former trial, be cause for a reversal of this case, for receiving new evidence by the jury. The reproduction of the testimony of the witness Sargent was presented by legitimate means, and the knowledge of the jury of the former trial, did not come to them in their retirement, but was received during the progress of the trial. See Moon v. State, 52 Tex. Crim. Rep. 336 and other cases cited.

### 7.—Same—Change of Venue—On Court's Own Motion—Held Proper.

Where the court of his own motion transferred this cause to Van Zandt County, under Art. 626 C. C. P., and not under Art. 631 C. C. P. the action of the trial court in so changing the venue will not be revised on appeal, unless it be shown that the rights of the accused have been materially prejudiced by the action of the court in changing the venue, and this not having been shown, no error is presented. See Rothchilds v. State, 7 Tex. Crim. App. 519 and other cases cited.

### 8.—Same—Change of Venue—No Error Shown.

Where, on being called for trial in Kaufman County on a change of

venue from Van Zandt County, appellant made a motion to remand the case to Van Zandt County, and his motion did not contain the requisites required for a change of venue, which are set out in Art. 628 C. C. P., and the evidence adduced on the hearing of such motion is not brought up by bills of exception or statement of facts filed during term time, as is required by Art. 634 C. C. P., no error is presented.

### ON REHEARING.

#### 9.—Same—Argument of Counsel—Not Improper.

Where the appellant had testified himself, that there had been two former trials, there was nothing improper nor harmful to him in the remark of the prosecuting attorney that "If you had testified before three juries, as this defendant has, you'd be a good witness too," and no error is presented on this complaint of appellant.

#### 10.—Same—Evidence—Properly Admitted.

Where, it was properly in evidence that appellant had been formerly tried for the same offense, the cross-examination of several defense witnesses by the state in which the former trial was incidentally referred to, it does not impress us that such questions were so framed in order to convey to the jury the information that appellant had been convicted upon the former trial, nor do we believe that such questions were in violation of Art. 759 C. C. P. (old Art. 843). See Tollet v. State, supra, and *Ashlock v. State,* 16 Crim. App. 13.

*Application to file second motion for rehearing overruled.*

Appeal from the District Court of Kaufman County. Tried below before the Hon. Joel R. Bond, Judge.

Appeal from a conviction of murder, penalty five years in the penitentiary.

There have been two previous appeals of this case. The first appeal will be found reported in 89 Tex. Crim. Rep. 21, the second in 92 Tex. Crim. Rep. 607; a reference to these cases is made for a complete statement of the facts.

*Thos. R. Bond, Young & Stinchcomb, Johnson, Edwards & Hughes, Wynne & Wynne, Rasbury, Adams & Harral* et al., *Shields & Anthony* and *Cooley & Crisp,* for appellant.

*W. R. Jones, Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Appellant was convicted of murder, and his punishment fixed at confinement in the penitentiary for a period of five years.

There have been two previous appeals. The judgments of conviction were for the same offense. In the first trial the penalty assessed was confinement in the penitentiary for ninety-

nine years. The second trial resulted in a verdict assessing the punishment at forty-five years in the penitentiary. See 89 Texas Crim. Rep. 21, and 92 Texas Crim. Rep. 607.

The facts leading to and attending the tragedy are set out in some detail in the opinions of this court in the reports mentioned and a re-statement of them is not deemed essential in disposing of this appeal further than will be done in connection with the various bills of exception. The homicide occurred in Gregg County. There was a change of venue to Van Zandt County after the first trial, and to Kaufman County after the second trial.

Some of the bills of exception relate to the procedure attending the examination of the witness Schoults. It is recited that counsel for the state, before beginning the examination of the witness, said:

"At this stage we desire to introduce first the statement of facts as the record of the stenographic report of the testimony of the official statement of facts taken at the trial of the defendant at Longview, which statement subsequently was filed with the clerk and used as the official stenographic report of the testimony taken on the trial in the Court of Criminal Appeals of Texas."

Objection was made to this statement of the attorney for the State. The court said: "*I sustain the objection.*" State's counsel then said: "I am introducing the record," and turned to the witness Schoults and said: "Examine that paper, Mr. Schoults." These remarks of the state's attorney were made the subject of objection as an unwarranted effort to convey knowledge to the jury of the result of the former trial. Upon direct examination this witness testified that he was county attorney of Gregg County and participated in the first trial of the appellant and heard Henry Sargent testify as a witness in behalf of the state; that Sargent was now dead. There was exhibited to the witness a paper which, upon examination, he stated: "I have had occasion to read this testimony heretofore from this record." On cross-examination the witness stated that the paper in his hand was the transcribed notes of the testimony given by the witness Sargent upon the first trial of appellant, which notes had been reduced to narrative form by the official stenographer. Archer, the official stenographer, was then called. He identified the paper mentioned and gave testimony to the effect that he had correctly reported the testimony of Sargent and transcribed it in question and answer form,

from which the narrative statement of facts was made, the shorthand notes having been destroyed by fire.

The negro Sargent, having given testimony upon the former trial of the appellant's case and having since died, it was the right of the state to reproduce upon the present trial the testimony of the deceased witness. See Porch v. State, 51 Texas Crim. Rep. 7; Young v. State, 82 Texas Crim. Rep. 257. As a predicate for the reproduction of his testimony, it was deemed necessary to prove that the witness was dead; that there had been a previous trial of the appellant at which Sargent, after being sworn as a witness, gave testimony. It was also necessary, by competent evidence, to prove his testimony, in substance. To lay the predicate mentioned, the state introduced the witness Schoults; and to prove the testimony given by Sargent, the official court stenographer was called as a witness. It being essential in the reproduction of the testimony to prove that the witness Sargent had given the testimony at the former trial, it seems obvious that while by this means knowledge that there had been a previous trial necessarily came to the jury, it could not logically be held to violate Art. 843, C. C. P., of the statute which inhibits comment upon the result of the former trial, or the use of it as a basis for a presumption adverse to the accused. See opinion of Presiding Judge Davidson in Tollett v. State, 60 S. W. Rep. 964; also the case of Grimes v. State, 64 Texas Crim. Rep. 65.

It is insisted, however, that in developing the present case and referring to the appeal from the result of the former trial in which it was revealed that there was a verdict of guilty, the procedure was violative of the statute mentioned, namely, Art. 843, C. C. P., and must necessarily vitiate the conviction. The statute in question reads thus:

"The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument."

The opinions of this court reveal many instances in which, by reversal of the judgment it has sought to protect the accused against the harmful transgressions of the inhibition contained in the statute. See Benson v. State, 56 Texas Crim. Rep. 52; 118 S. W. Rep. 1050; Wyatt v. State, 58 Texas Crim. Rep. 115; Pierce v. State, 87 Texas Crim. Rep. 379. On the other hand, the court has recognized the fact that there may be an inadvertent or incidental reference to the former convic-

tion of the accused which would not warrant a reversal. This principle was announced in the case of Baines v. State, 43 Texas Crim. Rep. 491, and was reiterated and emphasized in the opinion of Judge Ramsey in Smith's case, 52 Texas Crim. Rep. 344, from which the following quotation is taken:

"We think the true rule is that where, as in this case, the testimony supports the verdict, and the charge of the court properly submits the case to the jury, that a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case should it be set aside in a case tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see, in the light of all the circumstances, that such reference and discussion did or might have prejudiced the appellant's case. It is possible that there is some language in some of the decisions not wholly in accord with the views here expressed, but on full consideration this is believed to be the correct rule."

The instances are numerous where the rule stated in Smith's case, supra, has since been approved. Among them are Coffman v. State, 73 Texas Crim. Rep. 295, in which the opinion of affirmance was unanimous. A witness, when asked if she had testified on the former trial, answered that she did at the time the accused got the death sentence. The court instructed the jury to disregard the remark. The matter was properly brought up by bill of exceptions and rejected as a reason for reversal. Analogous cases are Arnwine v. State, 54 Texas Crim. Rep. 213; Morrison v. State, 39 Texas Crim. Rep. 519; Oates v. State, 56 Texas Crim. Rep. 575, 121 S. W. Rep. 370.

The production of the transcribed notes of the stenographer, the identification of them, and the proof of the facts related by Sargent by the witness who heard the testimony, occur to us to have been proper means of bringing the matter in hand before the jury. The fact that they incidentally resulted in conveying to the jury the fact that there had been a previous trial and that it had resulted adversely to the appellant, is not, we think, violative of Art. 843, C. C. P. After the witness Archer had given the evidence mentioned, Schoults was recalled for further cross-examination. He testified that before giving testimony on the former trial the negro Sargent had been sworn; that of this fact he had an independent recollection; that while there had been some 75 or more witnesses who gave testimony in the trial, that his recollection bore directly upon

the witness Henry Sargent. Witness Schoults was interrogated in great detail with reference to his recollection touching the administration of the oath to Sargent. The inquiry led to statements with reference to the locality of the various witnesses, the place at which court was held, and whether the witnesses were sworn individually or all together, and various other details. Among other things, the witness said:

"I can't say just where the negro was standing, but I know when he was brought into the court house and why he was brought there, but I could not say whether he was standing on the right or the left of the clerk or right in front of him. I would not attempt to say what part of the house he was in. I was not looking at him all the time, but I know the negro was in there and they told him to stand up. I heard all the witnesses told to stand up and' be sworn."

And added:

"And I can tell you why I remember it if you want me to do that; if you want to know why I know he stood up with the rest of the witnesses and was sworn I can tell you."

Counsel told him "No," that he did not want to know why he knew, but wanted to test his memory, and then the witness testified that he saw the witness stand up and be sworn; that he could not tell the jury where the witness was. Upon re-direct examination, state's counsel told the witness to proceed to tell why he remembered the swearing of the negro. To this inquiry objection was made upon many grounds, all of which were overruled, and witness was permitted to testify. "Well, they were after that negro; he was having to be looked after all the time and watched by the peace officers; he had to be protected." This bill is qualified with the statement that the memory of the witness was challenged on cross-examination by counsel for appellant and in view of the cross-examination the court deemed it proper to permit the witness to state the reason that he was able to recollect the fact that the negro Sargent was sworn upon the former trial.

The purpose and tendency of the cross-examination of the witness Schoults was to discredit the truth of his statement that he recollected the swearing of the witness Sargent. The manner of the cross-examination was such as to impress the witness and the attorneys for the state with the idea that the testimony of Schoults to the point mentioned was to be made a matter of serious controversy. It occurs to us that in view of the cross-examination, the rules of evidence were not trans-

gressed in permitting the witness to explain why he remembered the swearing of the negro Sargent.   In Branch's Ann. Tex. P. C., Sec. 94, it is said:

"The defendant or any other witness is entitled to explain any fact tending to create a distrust of his integrity or truthfulness."

Many cases are cited in support of this view.   Among them are the following, which illustrate the principle which is deemed applicable to the present matter; Cornett v. State, 54 Texas Crim. Rep. 372; Brace v. State, 43 Texas Crim. Rep. 48; The State v. Ivey, 41 Texas Rep. 38; Thompson on Trials, 2nd Ed., Vol. 1, Sec. 475.   The details of the transaction in which the negro Sargent was sworn having been gone. into in the cross-examination, the explanatory testimony that the negro was under the care of peace officers was admissible under the statute making the whole of a transaction admissible as explanatory of a part introduced by the adverse party to the suit.  See Art. 811, C. C. P.; Kunde v. State, 22 Texas Crim. App. 65.

In allowing the cross-examination of the witnesses Stewart, Tom Davis and Wytche, .it is conceived that no error was committed.   Stewart was present at the trial of the appellant at Longview.   He was a friend of the appellant and of his son, Charley Henderson.   According to his testimony, he knew that the deceased Killingsworth possessed a pistol.   He was aware that his ownership and possession of the pistol was a controverted issue in the case.   He was not a witness on the trial, but after the trial volunteered to make an affidavit of his knowledge of the possession of the pistol by the deceased in order that the affidavit might be used by the appellant in his effort to secure a new trial.   The conduct of Tom Davis was of like nature.   The witness Wytche had appeared for the state as County Attorney in the trial at Gregg County and upon the present trial he appeared as a witness for the appellant to contradict and impeach the testimony of Hughey on an important issue in the case.   The fact that Wytche, knowing that Hughey. had disclaimed any knowledge of the tragedy, had thereafter used him on the trial in Gregg County as an eyewitness, and contended that the facts proved which came in part from the witness Hughey warranted the jury in inflicting the extreme penalty upon the appellant, was a matter worthy of consideration by the jury as bearing upon the animus of the witness Wytche and was, we think, available to the state

when adduced by way of cross-examination under the rule stated by Mr. Branch in the following words:

"The adverse party may prove declarations of a witness which tend to show bias, interest, prejudice, or any other mental state or status which fairly construed might tend to affect his credibility."

Numerous citations are collated under the section containing the text. See Branch's Ann. Tex. P. C., Sec. 163. The application of this rule of evidence is not abrogated in an instance wherein the discrediting fact relates to the conduct of the witness with reference to a former trial. Illustrative is the following quotation from the opinion of this court, written by Judge Davidson, in the case of Tollett v. State, 60 S. W. Rep. 964:

"If appellant took the witness stand in his own behalf, and his testimony upon the trial was different from that delivered by him on the former trial, this fact could be shown, and defendant could be questioned in regard to it. If his testimony was, word for word, taken down on the former trial, and his testimony on this trial in regard to the same matter was different, his former evidence could be shown or read to him by the District Attorney preparatory to impeachment. This is authorized by law, and has not been held to be an infraction of the statute prohibiting reference to former trials. It might be necessary, where a witness on a subsequent trial has changed his testimony as given on a former trial, to prove his testimony on the former trial, as the basis of impeaching his evidence on the subsequent trial. The statute in question never intended to cut off all rules of evidence. As the bill presents the matter, no error is shown."

See also Ashlock v. State, 16 Texas Crim. App. 21, from which the following is quoted:

"We think the District Attorney had the right, on the cross-examination of defendant's witnesses, to elicit from them that they had testified before the grand jury in this same case, and had done so without being subpœnæd, and at the instance of defendant, etc. This was allowable for the purpose of showing the bias of the witnesses in favor of the defendant, and to enable the jury to properly weigh the testimony of said witnesses. (Stevens v. The State, 7 Texas Ct. App., 39.)"

The inquiry of the witness, Tom Moore, in these words: "So that the two years you stayed out there you didn't do a thing but play poker, did you?" was improper. Objection to it was

sustained. Considering the record, the incident is not deemed important.

In bill No. 12 complaint is made of the refusal of the court to continue the case in order to secure the testimony of Charley Henderson. From the averments in the motion and the exhibits attached thereto, it is made to appear that in the year 1919 a joint indictment for the murder of Robert Killingsworth was presented against the appellant and Charley Henderson, a son of the appellant; that after discussing the facts with the main witnesses for the state, an application for severance was made by Charley Henderson upon the averment that it was not believed that there was sufficient evidence against Joe Henderson to warrant his conviction and that it was desired that he be first tried, to the end that his testimony might be used upon the trial of Charley Henderson. This motion to sever was granted, since which time the appellant has been twice tried, or at least a verdict of guilty has been rendered against him. The purpose of the present motion was to reverse the order of trial affected by the severance brought about by appellant so that Charley Henderson might be tried first. In the meantime, that case had been removed on a change of venue from Gregg County to Nacogdoches County, where it was pending. Art. 727, C. C. P., which controls the subject in question, declares that this does not apply where the severance sought would work a continuance of the case. It seems clear that under the existing conditions, the ruling of the court in refusing to defer the trial of appellant to await the disposition of the Charley Henderson case was correct. Locklin v. State, 75 S. W. Rep. 305; Polk v. State, 152 S. W. Rep. 907; Sapp v. State, 87 Texas Crim. Rep. 606, 223 S. W. Rep. 459.

Upon the hearing of the motion for new trial, G. E. Boggs, who sat upon the jury, testified that some one whose name he could not recall was mentioned at the previous trial of the appellant; that he would not say that it was discussed, but that some one might have been mentioned at the previous trial. It was mentioned in connection with the fact that it had been brought out upon the present trial that there had been a previous trial and conviction of the appellant at Longview; that there was something of that kind mentioned in connection with the testimony of Mr. Schoults, and there was also evidence to the effect that some of the witnesses on the present trial made affidavits which were attached to the motion for new trial in Gregg County, and from these facts the juror drew the

inference that there had been a conviction. He also testified that the witness Davis had testified that he stepped the distance from the house of the witness Hughey to where the homicide took place; that it was a distance of 200 yards; that Hughey had testified that at that distance he could distinguish a white man from a negro. The witness said he did not think there was any test made in the jury room to ascertain whether such recognition could be made; that somebody sitting in the window said: "That looks like a negro yonder;" that the witness recognized a certain negro, Old Ben, whom he had known for a number of years. He said that the mention of the previous trial was casual and that it was his recollection that the foreman wanted them to refrain from discussing it. The juror said that he had heard of the conviction before he was selected upon the jury.

Ownsby, one of the jurors, said:

"I recall that someone asked what had become of the negro who had testified and some fellow remarked that they had hung him. They did not say who had hung him, but I supposed it was the Hendersons."

The juror gave the name of Monk as the name of the juror to whom he was talking at the time it was mentioned. On re-direct examination he stated that before he was selected as a juror he knew of the trials, but did not know of the convictions.

Monk testified that he heard nothing said about the negro Sargent having been hung; that he did not say it and heard no one else say it. It was proved on the trial that he was dead. The juror had talked with Ownsby, but not while they were alone. This witness knew that there had been previous trials of the appellant at the time he was taken on the jury, but did not know of the results of them.

Colquitt, another juror, heard no discussion or mention of the former trial, nor of the cause of the death of the negro Sargent. This juror, at the time he was selected, did not know of the previous trials, but learned during the present trial from the evidence of the negro Sargent, which was introduced on the trial, that there had been a previous conviction of the appellant. He also heard questions propounded by one of the attorneys for the state to one of the witnesses wherein he was asked if it was not a fact that he had never testified until after the conviction at Longview.

Burk, another juror, said that he heard no discussion of the

previous conviction of the appellant; that he did not know of his previous conviction until after the verdict in the present case was rendered and he was discharged. He did not know before going on the jury that there had been a previous trial, but did not learn until the conduct of the trial that there had been a conviction.

McVey testified that he heard no discussion of the previous conviction and no mention of the negro, Henry Sargent, having been hung. The manner of his death was not mentioned or discussed. From the inquiry about the affidavit attached to the motion for new trial, which was brought out upon the trial, the juror might have thought that there had been a previous conviction. He learned that there had been a previous trial from the evidence adduced.

Touching the averment in the motion for new trial to the effect that there was a discussion of the previous conviction or that there was an experiment with reference to the distance in which a negro might be recognized, or that there had been any statement in the jury room that a negro had been hung or that the appellant had been connected with his death, we think there is either an absence of proof or such conflict as warranted the trial court in deciding the issue of fact against the appellant. Under such circumstances the rule is well settled that on appeal the finding of the trial court is conclusive. Shaw v. State, 32 Texas Crim. Rep. 155; Adams v. State, 48 Texas Crim. Rep. 452; and other cases collated in Branch's Ann. Tex. P. C., Sec. 574.

Relating to the averment that there was reference to or mention of the former trial of the appellant, we think that this cannot be regarded as receiving new evidence by the jury. The reproduction of the testimony of the witness Sargent, brought into the case, by legitimate means, evidence that there had been a previous trial of the appellant. Moreover, many members of the jury, at the time they were impaneled, were aware of the fact that there had been a previous conviction. The knowledge, therefore, of the former trial did not come to the jury after their retirement but was received by them either during the progress of the trial or prior thereto. Under such circumstances, a reversal is not warranted. Moore v. State, 52 Texas Crim. Rep. 336; 107 S. W. Rep. 540; Oates v. State, 56 Texas Crim. Rep. 571; 121 S. W. Rep. 370; Arnwine v. State, 54 Texas Crim. Rep. 298; Wood v. State, 86 Texas Crim. Rep. 550; Patterson v. State, 87

Texas Crim. Rep. 104; Morris v. State, 84 Texas Crim. Rep. 100; 206 S. W. Rep. 82.

In so far as the jury may have been authorized to infer from the developments of the evidence upon the trial that there had been a previous verdict of guilty, the information so received is deemed but an "incidental reference" within the purview of the law as declared in the case of Baines v. State, and Smith v. State, supra, and others to the same effect.

The trial judge, upon his own motion, changed the venue of the appellant's case from Van Zandt to Kaufman County. Appellant requested that the order be rescinded and offered evidence controverting the recital in the order of transfer to the effect that a fair and impartial trial alike to the state and the appellant could not be had in Van Zandt County. The court declined to hear this evidence.

We have examined the proffered testimony and express the opinion that it presents such a conflict as would make it discretionary with the court to order the change of venue if his discretion had been an issue conditioned upon the terms of Art. 631 C. C. P., Henderson v. State, 229 S. W. Rep. 535. His authority for changing the venue, however, was not dependent upon Art. 631, C. C. P., which names the procedure and circumstances upon which an application by the state or the accused to change the venue may be granted or refused. The order in the present case is based upon Art. 626, C. C. P., which vests in the trial judge the authority, *upon his own motion,* to make the change. The order in the present case contains the recitals which are prescribed by that article as the basis of the transfer, namely, that *"the presiding judge shall be satisfied that a trial, alike fair and impartial to the accused and to the state, cannot, from any cause, be had in the county in which the case is pending."* We understand that law to be that the revision of such an order upon appeal can only be made in a case in which it is shown that the rights of the accused have been materially prejudiced by the action of the court in changing the venue. Rothschild v. State, 7 Tex. Crim. App. 519; Bohannon v. State, 14 Tex. Crim. App. 271; Woodson v. State, 24 Tex. Crim. App. 153; Walker v. State, 42 Tex. Crim. Rep. 360. In the present case, we fail to discern any abuse of the discretion vested in the trial judge. Treadway v. State, 144 S. W. Rep. 655; Mayhew v. State, 155 S. W. Rep. 191; English v. State, 85 Tex. Crim. Rep. 451; Baker v. State, 87 Tex. Crim. Rep. 213.

Upon the calling of the case in Kaufman County, appellant

made a motion to remand the case to Van Zandt County. This motion does not contain the requisites required for a change of venue which are set out in Art. 628, C. C. P., and the evidence adduced thereunder is not brought up by bills of exceptions or statement of facts filed during the term at which the conviction was had, as is required by Art. 634, C. C. P., relating to motion to change the venue. The motion to send the case back to Van Zandt County, therefore, could be regarded as nothing more than a reiteration of the protest and exception urged against the order as originally made. As it appears in the record, we are of the opinion that no error is shown to have been committed in either of the matters complained of in the bill under discussion.

Finding no error warranting a reversal, an affirmative is ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists, in his motion for rehearing that this court erred in the disposition of the questions which related to the alleged misconduct of the jury and to the complaint that Art. 759 C. C. P. (formerly Art. 843) had been violated. We think the point made as to alleged misconduct of the jury correctly disposed of in the former opinion, and further discussion of it is not necessary.

Article 759 is as follows: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." The only contention that former convictions of appellant were alluded to in argument is based on the language of the County Attorney referring to appellant as a witness wherein he said to the jury, "If you had testified before three juries as this defendant has you'd be a good witness too." The record shows from appellant's own evidence on this trial there had been two former trials and that appellant testified on each of them. We see nothing in this argument which can be legitimately construed as a reference to the result of those trials. The remaining question then for this court to determine seems to be whether the examination of witnesses was so conducted that it can legitimately be said former convictions of accused were used against him as a presumption of his guilt in the present trial. The state proved that one Sargent, an eye witness to the killing, was dead, and that the original stenographer's notes of his testimony given at a former trial had been destroyed by fire. The state was seeking

to reproduce his testimony by using the narrative statement of his evidence made by the stenographer on that trial and in doing so referred to it as the official stenographer's report of the testimony which had been filed with the clerk and used in the Court of Criminal Appeals of Texas. This was objected to as in violation of said Art. 59. One Hughey had testified for the state. Appellant sought to break the force of his testimony by the witness Davis whose evidence tended to impeach that given by Hughey. On cross-examination of Davis the attorney for the state proved by him that he did not testify upon the trial of appellant in Gregg County, and asked him if immediately after that trial he did not file an affidavit asking for a new trial. This question was also objected to as being violative of said Article 759, and as being an effort to inform the jury that appellant had been convicted at the trial in Gregg County. Appellant used the witness Stewart. Upon cross-examination it was elicited from him that all the facts testified to by him at the present time were known to him at the time of the former trial but that he had given no information as to his knowledge, and was asked if immediately after the former trial was over he was not one of the men who subscribed to an affidavit setting out the facts now sworn to by him for the purpose of securing a new trial. This was objected to as violating said Art. 759.

It is urged by appellant that it was not necessary for counsel representing the state to have referred to the statement of facts mentioned in the first complaint as having been "used in the Court of Criminal Appeals," nor was it necessary to ask the witnesses heretofore mentioned if they had not filed affidavits "for the purpose of securing a new trial;" that the questions were purposely so framed in order to convey to the jury information that appellant had been convicted upon the former trial. We think the record does not warrant us in reaching the latter conclusion.

There may have been men upon the jury sufficiently informed with reference to procedure in this state to have drawn the conclusion that a new trial could not have been sought by anyone except appellant, or that it would only be after conviction that a "statement of facts" could be used in the Court of Criminal Appeals, but we do not think it necessarily follows that the questions objected to were purposely so framed that the jury might reach the conclusion complained of. In one instance the state was seeking to lay a predicate for the introduction of the testimony of a dead witness. In the other instances the state was engaged in legitimate cross-examination of witnesses to show

their interest or bias in behalf of appellant. We think the inference can not be reasonably drawn that it was an effort on the part of the state to get before the jury the fact of conviction of the former trial in order to use it as a presumption against appellant upon the present trial, nor that it so resulted. In one instance it appears that counsel representing the state referred to a former conviction. It occurred in this manner. The witness Moore had testified for appellant that upon one occasion he had seen deceased with a pistol. Upon cross-examination he was asked the following question: "Did you make an affidavit immediately after the trial setting forth the fact that while you were in the court house (at a former trial) you heard argument to the effect that the deceased did not own a pistol and had never owned a pistol, but that you did not realize the importance of it, and that you did not tell Mr. Henderson the facts about it until after the conviction." It is urged by appellant that this was a direct reference to the former conviction in contravention of said Art. 759 C. C. P. The recital of facts in the bill indicates that the purpose of counsel was to show the interest of the witness Moore as affecting his testimony. The reference to the former conviction seems to have been in the affidavit made by the witness to the effect that he did not realize until after such conviction the importance of the facts claimed to be within his knowledge and the inquiry was about this affidavit. We think it may be justly regarded as an incidental reference to the former conviction and does not bear the legitimate construction of an effort on the part of counsel representing the state to use that fact as a presumption against appellant upon this trial, and within the principle announced in Tollett's case, 60 S. W. 964, and Ashlock's case, 16 Tex. Crim. App. 13.

Believing the case to have been properly disposed of in our original opinion appellant's motion for rehearing is overruled.

*Overruled.*

### OPINION ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have carefully considered appellant's application. It is not shown that we declined to consider or omitted to consider any material issue as to the rights of appellant, nor are matters here set up that were not discussed and passed upon either in the original opinion or when before the court on rehearing. Leave to file second motion for rehearing will be refused. Hickman v. State, 93 Tex. Crim. Rep. 407.

*Application denied.*